Oscar Alberto Canas
CUADRAS, Petitioner,

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 88-7478.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1989.

Decided Aug. 3, 1990.

Kathleen A. McKinley, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for petitioner.

Ellen Sue Shapiro and Alison R. Drucker, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for respondent.

Before HALL, BRUNETTI and NOONAN, Circuit Judges.

BRUNETTI, Circuit Judge:

Oscar Alberto Canas Cuadras ("Cuadras") petitions for review of the Board of Immigration Appeals ("BIA") decision dismissing his appeal from the Immigration Judge ("IJ") decision that ordered Cuadras's deportation to El Salvador and denied Cuadras's applications for voluntary departure, asylum, and withholding of deportation. We affirm.

Cuadras is a 28 year-old native and citizen of El Salvador who entered the United States without inspection on April 30, 1983.

On June 28, 1983, Cuadras was served with an order to show cause why he should not be deported to El Salvador. Cuadras hired counsel and obtained a continuation of his deportation hearing in order to file an asylum application.

Cuadras submitted his asylum application on November 17, 1983. It stated that Cuadras feared persecution primarily for the following reasons: (1) "Especially because of my age, I [Cuadras] am subject to suspicion and forceable recruitment by both sides"; (2) "A cousin belongs to a guerrilla organization. He lives in the same town and has one last name [the same] as mine. I am in danger from the authorities because I am related to him" and (3) "[B]ecause I am a young man, I am especially subject to suspicion and persecution. I only wanted to work on my farm in peace, not [to] have to fight. Also the area I lived in is particularly dangerous". The application also stated that, in one instance, the guerrillas tried to persuade Cuadras to join them, telling him that he could earn more money as a guerrilla than as a farmer and giving him a rifle to hold, saying, "[S]ee, it doesn't even [weigh] anything."

After reviewing this application, the State Department's Bureau of Human Rights and Humanitarian Affairs (the "BHRHA") forwarded a letter expressing the opinion that Cuadras did not qualify for asylum because he had not demonstrated a well-founded fear of persecution in El Salvador.

At the September 20, 1984, deportation hearing before Immigration Judge William F. Nail, Jr., Cuadras conceded deportability. Cuadras then filed a Motion to Remand his application to the BHRHA and a Motion to Compel Attendance of State Department Witnesses and/or Response to interrogatories. The IJ denied both motions.

Cuadras testified that he and his family were farmers. They farmed land near an area controlled by guerrillas. Cuadras stated that the guerrillas did not want people to produce crops. The guerrillas threatened him, his father, and his brother if they continued to farm in that area. Once, the guerrillas found Cuadras watering crops by machine and shot the machine until it would no longer work. The guerrillas also destroyed the Cuadras' crops when they neared harvest. However, Cuadras presented no evidence that he was ever physically abused, harmed, arrested or incarcerated in El Salvador.

Finally, Cuadras and his family decided to give up farming. Cuadras's father abandoned the area and did only a little subsistence farming close to their village. His brother went into construction. The guerrillas stopped harassing them, but threatened to harm Cuadras's father and brother if they tried to begin farming again.

During 1981 and 1982, Cuadras served as military commissioner in his district. In this capacity, Cuadras reported any problems, such as someone having been killed or injured, to the military. Cuadras believes the guerrillas might kill him because of this prior connection to the military.

The guerrillas also tried to recruit Cuadras, and successfully recruited Cuadras's cousin. Cuadras is afraid he will be persecuted by the government because of his cousin's involvement. Cuadras is also afraid he will be mistaken by the military for his cousin, who shares Cuadras's last name, and be killed.

In addition, because of fighting in the area where Cuadras lived, innocent civilians were often killed or injured. For example, his aunt was shot in the foot while

she was out gathering firewood. For all of the above reasons, Cuadras left El Salvador on December 12, 1982.

In a decision dated September 20, 1984, the IJ found Cuadras deportable under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), and denied his applications for asylum and withholding of deportation to El Salvador under sections 208(a) and 243(h) of the Act, 8 U.S.C. §§ 1158(a) and 1253(h), and for voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e). The IJ did not make an adverse credibility finding regarding any of Cuadras's testimony. However, the IJ found no evidence of any incident that would indicate persecution because of race, religion, political opinion, or membership in any group.

Cuadras appealed to the BIA. In an order dated June 6, 1988 the BIA dismissed the appeal. A petition for review was timely filed with this Court on November 23, 1988.

## DISCUSSION

### I. *Eligibility for Asylum.*

To establish eligibility for asylum, an alien must demonstrate that he is unwilling to return to his country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

In *Cardoza–Fonseca,* this court defined "well-founded fear." There is both an objective component ("well-founded") and subjective component ("fear") to the statutory test. *Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1452–53 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *see also Blanco–Comarribas v. INS,* 830 F.2d 1039, 1042 (9th Cir.1987).

In dismissing Cuadras's appeal, the BIA did not use the language of this court's two-pronged formulation of the well-founded fear test. Instead, the BIA used the "reasonable person" test set forth by the Fifth Circuit in *Guevara–Flores v. INS,* 786 F.2d 1242 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987), and adopted by the BIA in *Matter of Mogharrabi,* Int.Dec. 3028 (BIA, June 12, 1987). However, the use of "magic words" is not the focus of our inquiry; we look at the analysis actually applied by the BIA. *Vides–Vides v. INS,* 783 F.2d 1463, 1468 (9th Cir.1986). The *Mogharrabi* "reasonable person" analysis is not inconsistent with the two-pronged test created by *Cardoza–Fonseca.* Both *Guevara–Flores* and *Mogharrabi* discuss both subjective fear and an objective basis as components of their "reasonable person" test for purposes of asylum claims.[1] Thus, the "reasonable person" test used by the BIA in this case includes both the subjective and objective inquiries required by *Cardoza–Fonseca.*

■ To satisfy the subjective prong of the test, an alien must prove that his fear

---

**1.** In *Guevara,* the Fifth Circuit acknowledged that:

> the well-founded fear of persecution standard is *at least partially subjective,* because fear is a state of apprehension or anxiety not usually subject to rational measurement. *See Cardoza–Fonseca,* 767 F.2d 1448, 1452 (9th Cir. 1985).... The standard is only *partially subjective,* however, because it requires that the fear be a well-founded one. The *alien's fear* must have some basis in the reality of the circumstances; mere irrational apprehension is insufficient to meet the alien's burden of proof.

786 F.2d at 1249 (emphasis added). Clearly the *Guevara* court did not perceive itself as discarding the subjective element stressed in *Cardoza–Fonseca.*

Nor has the BIA so perceived *Guevara. See Mogharrabi,* Int. Dec. at 7 finding Fifth Circuit's formulation consistent with, and more concrete than, the Ninth Circuit's).

Nor has this circuit. *See Blanco–Comarribas v. INS,* 830 F.2d 1039, 1042 (9th Cir.1987) (relying upon *Guevara* in determining whether petitioner satisfied subjective prong of test). In fact, no court has perceived any real inconsistency between our formulation of the asylum standard and the Fifth Circuit's. *See, e.g., Cardoza–Fonseca,* 480 U.S. at 451, 107 S.Ct. at 1223 (Blackmun, J., concurring) ("[D]ifferences in opinion have arisen as to the precise formulation of the 'well-founded fear' standard." (footnote omitted)); *Carcamo–Flores v. INS,* 805 F.2d 60, 68 (2d Cir.1986). ("[the Fifth Circuit's] reasonable person standard adequately captures the various formulations that have been advanced to explain the well-founded fear test.").

is "subjectively genuine." *Blanco–Comar-ribas*, 830 F.2d at 1042 (quotation omitted); *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1579 (9th Cir.1986). This prong of the test is satisfied by an alien's credible testimony stating a genuine fear of persecution. *Blanco–Comarribas*, 830 F.2d at 1042. Because the IJ did not question Cuadras's credibility, this prong of the test is satisfied.

To satisfy the objective prong of the test, an alien must show that his fear has enough of a basis in reality that it can be considered well-founded. *Id.* Mere irrational fear is not enough. *Id.* There must be a valid reason for the fear. *Id.; see also Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1283 (9th Cir.1984).

The record contains substantial evidence that undercuts Cuadras's claim that he fears persecution by the government. Cuadras has worked for the government and has never been threatened or harmed by any agent of the government. The possibility of confusion with his cousin because of the similarity of names is too speculative to give rise to a well-founded fear of persecution. The possibility that he will be persecuted because of his familial relationship to a guerrilla is also entirely speculative, especially given Cuadras's past government service.

Cuadras has also failed to show an objective basis for his fear of persecution from any nongovernmental group. Cuadras has not shown that any guerrilla threats were made because of any political view or characteristic enumerated in the statute. Cuadras, like his father and brother, wished to continue farming. Once Cuadras's father and brother ceased farming in the disputed area they were not bothered, so it appears that Cuadras could similarly avoid harassment.[2] The guerrillas never indicated any knowledge that Cuadras holds any particular political opinion. Cuadras never expressed political neutrality to the guerrillas.

Cuadras insists that the force used against him to prevent him from working at his farm was political persecution. Cuadras argues that his attempts to continue working were an expression of political neutrality for which he was persecuted by the guerrillas. However, there are many reasons why guerrillas might wish to stop farmers from farming in a particular area. Similarly, there are many reasons why a farmer might wish to continue farming (for example, economic gain), even if he sympathized with the guerrillas. Cuadras has not proven that the harassment was based on his political views, or that the guerrillas attributed any political views to him. In fact, the evidence is to the contrary. To accept Cuadras's broad definition of political persecution would be to hold that anyone who is prevented by guerrillas (or the government) from working in a particular occupation in a particular area is the object of persecution. We decline to accept so broad a definition of political persecution.

Cuadras's claims are further undercut by the fact that his father and brother have not been harmed, and they apparently still reside unmolested in El Salvador. *See Vides–Vides, supra,* at 1467 (fact that relatives not harmed undercut claim of probability of persecution, even though alien's brother had been killed).

For these reasons, the BIA's determination that Cuadras has not shown a well-

---

**2.** The government contends that *Quintanilla–Ticas v. INS*, 783 F.2d 955 (9th Cir.1986), requires this court to affirm solely on the basis that Cuadras could escape danger by avoiding his hometown.

In *Quintanilla–Ticas,* this court used evidence that Salvadoran aliens could avoid geographically localized danger by settling in a different part of the country to defeat a showing of well-founded fear of persecution. Rejecting the asylum claim of a family of aliens whose father was threatened with death, the court stated, "Even if petitioners would face some danger in their home town ..., deportation to El Salvador does not require petitioners to return to the area of the country where they formerly lived." *Id.* at 957, citing *Marquez–Medina v. INS,* 765 F.2d 673, 676 (7th Cir.1985). However, the court's ruling was not based solely on this factor.

Thus, although *Quintanilla–Ticas* does not require this court to affirm the BIA decision, it allows the court to consider evidence that Cuadras could avoid the geographical source of his danger when it reviews the BIA's determinations as to "well-founded fear" of persecution.

founded fear of persecution is supported by substantial evidence. *See Quintanilla–Ticas v. INS*, 783 F.2d 955, 957 (9th Cir.1986).

## II. *Withholding of Deportation.*

■ To qualify for withholding of deportation, an alien must show that it is more likely than not that he will be persecuted "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h); *Blanco–Comarribas v. INS*, 830 F.2d at 1041. "Withholding is not required if the alien 'might' or 'could' be subject to persecution. A *clear probability* ... of persecution must be demonstrated." *Blanco–Comarribas*, 830 F.2d at 1041 (emphasis added).

■ In denying Cuadras's claim for withholding of deportation, the BIA used the same evidence that it used to deny eligibility for asylum. However, Cuadras's burden of proof is much greater. The mere assertion of fear of possible persecution is not sufficient to establish a clear probability of persecution. *Id.* Because Cuadras has failed to show a well-founded fear of persecution, he cannot meet the higher burden of establishing a clear probability of persecution.

The BIA's determination is supported by substantial evidence. *See Blanco Lopez v. INS*, 858 F.2d 531, 533 (9th Cir.1988). Cuadras has failed to demonstrate a "clear probability" that he will be persecuted if he returns to El Salvador.

## III. *Voluntary Departure.*

Cuadras argues that it was improper for the IJ to deny voluntary departure based on Cuadras's failure to reply to the question whether he would be willing to leave the United States, if ordered to do so. Cuadras now asserts that he would, in fact, be willing to leave the United States if so ordered.

■ In order to qualify for voluntary departure, an alien must demonstrate that he would be willing to leave the United States if ordered by the IJ to do so. At the hearing, Cuadras was asked questions to determine whether he would be eligible for voluntary departure in lieu of deportation. 8 U.S.C. § 1254(e). The following dialogue took place:

Q: Will you obey the Judge's Order if such Order requires you to return to El Salvador?

A: It isn't of my liking, no.

Q: Well, would you obey the Judge's Order?

A: I don't know what he's going to say, but it isn't my choice or liking to go to El Salvador.

Q: Well, what we're discussing is whether or not you're going to leave the United States on your own volition or by the Government taking you. Now, if the Judge gave you the privilege of leaving on your own, would you obey his Order and leave the United States?

A: My choice would be to leave as soon as my country is fine.... But in the meantime, I don't want to go until it gets fixed over there.

The IJ gave the question one last try. He asked Cuadras, "If the final decision in your case is that you have to leave the United States, would you leave voluntarily, Mr. Can[a]s? Just tell me yes or no." Cuadras replied, "It isn't to my liking to go." The IJ replied, "Fine."

Cuadras has not submitted any evidence showing that he did not understand the questions or that he is willing and able to depart if ordered. Thus, the IJ could reasonably conclude that Cuadras was avoiding an answer because he would not voluntarily go to El Salvador.

Accordingly, the BIA did not abuse its discretion in dismissing Cuadras's appeal of the IJ's determination. *See Penalosa v. INS*, 468 F.2d 198 (9th Cir.1972).

## IV. *Cuadras's Motion to Remand.*

Cuadras contends that the IJ's refusal to grant Cuadras's motions to remand to the BHRHA and to compel attendance of witnesses and/or response to interrogatories deprived him of a full and fair hearing.

In a deportation hearing, an alien is entitled to the fifth amendment guaranty of due process, which is satisfied only by a "full and fair hearing." *Mohsseni Behbahani v. INS*, 796 F.2d 249, 250–51 (9th Cir.1986); *Garcia–Jaramillo v. INS*, 604 F.2d 1236, 1239 (9th Cir.1979), *cert. denied*, 449 U.S. 828, 101 S.Ct. 94, 66 L.Ed.2d 32 (1980). However, such a hearing is denied only if the error complained of causes the alien to suffer some prejudice. *Id.*

The IJ did not rely on the BHRHA report. Rather, the IJ heard and considered all the evidence and reached his own independent decision. Thus, Cuadras was not prejudiced by the BHRHA report, and his fifth amendment right to a full and fair hearing was not violated.

Cuadras also claims that the denial of his motions violated his statutory right to "a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the government." 8 U.S.C. § 1252(b)(3) (1982). After commencement of proceedings before an IJ, a subpoena requiring appearance of witnesses or production of documents may be issued by the IJ, either upon his own initiative or the application of either party. 8 C.F.R. 287.4(a)(2). However, the IJ is not required to issue the subpoena unless he is satisfied that the evidence is "essential." 8 C.F.R. 287.4(a)(2)(ii)(C). Since the IJ did not rely on the BHRHA report, he did not abuse his discretion in determining that the witnesses and documents were not essential.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

In adopting the position that a petitioner for asylum must show that a reasonable person in his circumstances would have well-founded fear, the Board adopted an objective standard of proof. The difference between the subjective state of mind of any particular individual and the state of mind of a hypothetical "reasonable person" is one of the most fundamental distinctions of Anglo–American law, *see* Prosser and Keeton, *Torts*, § 32 (1984); Holmes, *The Common Law*, 108–11 (1948); *The Germanic*, 196 U.S. 589, 596, 25 S.Ct. 317, 318, 49 L.Ed. 610 (1905).

In *Cardoza–Fonseca v. INS*, 767 F.2d 1448, 1452 (9th Cir.1985), *aff'd*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), this court stated: "The term 'well-founded fear' refers to a subjective state of mind, while 'clear probability' refers to an objective fact. The latter phrase requires an examination of the objective realities, while the former requires an analysis of the applicant's mental state (notwithstanding the fact that the fear must have some objective basis if we are ultimately to find it well-founded)." The court thus carefully distinguished between "a reasonable person" test and a subjective test of fear. The court recognized that there must be some facts outside the mind of the petitioner to which the petitioner would have to point— "specific, objective facts that support an inference of past persecution or risk of future persecution." *Id.* at 1453. But the necessity of such specific external facts was very far from converting the statutory focus on the petitioner's personal subjectivity into focus on what a hypothetical reasonable person would have feared.

Affirming this court, the Supreme Court noted that the government was contending for a standard that had no subjective component. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987). The Supreme Court rejected the government's position and went on to say: "That the fear must be 'well-founded' does not alter the obvious focus on the individual's subjective beliefs...." *Id.* at 431, 107 S.Ct. at 1213.

In invoking *Matter of Mogharrabi*, a case decided before the decision of the United States Supreme Court in *Cardoza–Fonseca*, and now in *Cuadras* in explicitly adopting "a reasonable person" standard, the Board has departed from controlling authority in this circuit and in the decisions of the United States Supreme Court. As the Board has not applied the proper standard, we are compelled to reverse it. *Ar-*

*teaga v. INS,* 836 F.2d 1227, 1233 (9th Cir.1988).

I would REVERSE and REMAND.