967 F.2d 590
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Cecilia Osbun RODRIGUEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70226.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 4, 1992.
Decided May 29, 1992.
 
 Before ALARCON, WILLIAM A. NORRIS and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Cecilia Osbun Rodriguez (Rodriguez) petitions for review of a decision of the Board of Immigration Appeals (BIA) denying her request for withholding of deportation and political asylum. She contends that the evidence she presented at her deportation hearing fulfilled the clear probability and well-founded fear of persecution standards required for relief under sections 208(a) and 243(h) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158(a), 1253(h). We disagree and affirm.
 
 I.
 
 3
 In support of her request for asylum and withholding of deportation, Rodriguez attempted to demonstrate that her life and freedom would be threatened if she returned to the Philippines and that she had a well-founded fear of persecution.
 
 
 4
 Rodriguez testified that she was a well-known actress in the Philippines. She was a member of a group called the Blue Ladies that assisted Imelda Marcos in social and philanthropic ventures. As a member of this group, she attended many functions at the presidential palace and developed a relationship with Imelda Marcos.
 
 
 5
 Between 1974 and 1985, Rodriguez lived with Ferdinand Marcos' personal physician, Dr. Edwardo Jamora. Dr. Jamora is the father of her daughter, Jacqueline Jamora. After the assassination of Benjamin Aquino in September of 1984, Rodriguez received anonymous phone calls in the middle of the night at the Jamora residence. These anonymous callers told Rodriguez to get out of the country because they were "going to get" her, her children and Dr. Jamora. The tires of her car were flattened several times, and on four or five occasions, her car was followed by men in a jeep. Her residence was also stoned several times. Fearing for her life and the life of her children, Rodriguez obtained a passport and left the Philippines on April 3, 1985.
 
 
 6
 The immigration judge denied Rodriguez's request for withholding of deportation and asylum. The BIA also concluded that Rodriguez failed to demonstrate a well-founded fear of persecution or a clear probability of persecution.
 
 
 7
 We review the BIA's decision to determine if it is substantially reasonable based on the evidence presented. De Valle v. INS, 901 F.2d 787, 790 (9th Cir.1990).
 
 II.
 
 8
 A. Withholding of Deportation under Section 243(h)
 
 
 9
 Section 243(h) of the INA prohibits the Attorney General from deporting any alien to a country where the alien's life or freedom would be threatened "on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1253(h). In order to qualify for withholding of deportation under section 243(h), an alien must demonstrate a "clear probability" that his life will be threatened based on one of these factors. Arteaga v. INS, 836 F.2d 1227, 1228 (9th Cir.1988); Diaz-Escobar v. INS, 782 F.2d 1488, 1491 (9th Cir.1986). The clear probability standard is satisfied only where the alien shows that it is "more likely than not" that he will be persecuted. INS v. Stevic, 467 U.S. 407, 424 (1984); see also Mendoza Perez v. INS, 902 F.2d 760, 761 (9th Cir.1990) (quoting Stevic ).
 
 
 10
 Rodriguez contends that the evidence she presented at her deportation hearing satisfied the clear probability of persecution standard. She argues that this evidence established that it was more likely than not that her life will be threatened if she returns to the Philippines based on (1) her visible political support for Marcos' regime and (2) her membership in the Marcoses' inner social circle.
 
 
 11
 Rodriguez failed to demonstrate that the harassment she suffered rises to the level of persecution. We have stated previously that "the mere fact that a threat was made may not be sufficient to establish a clear probability of persecution." Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir.1984). Whether it is more likely than not that Rodriguez would be subject to persecution depends on whether the group making the threat has the "will or ability to carry it out." Id.; see also Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988). The record shows that during the year that Rodriguez remained in the Philippines after the threats began, she and her children were not physically harmed. Rodriguez has failed to show that the persons who threatened her have the will or ability to carry out the imprisonment, physical torture, or homicide that Rodriguez alleges she will suffer if she is deported to the Philippines. Cf. Bolanos-Hernandez, at 1286 (petitioner demonstrated a clear probability of persecution where his claim of persecution based on a threat to his life was corroborated by testimony that five of his friends were killed for refusing to join guerrilla groups in El Salvador, and his brother possibly was killed shortly after he was forced to join the guerrillas).
 
 
 12
 Rodriguez has also failed to demonstrate that the harassment she experienced was the result of her political beliefs or membership in a particular social group. Instead, the evidence clearly suggests that the threats she received resulted from her association with Dr. Jamora.
 
 
 13
 In order to establish her eligibility for withholding of deportation based on group membership, Rodriguez must demonstrate that: (1) the class of persons she has identified are cognizable as a "particular social group" under section 243(h); (2) she qualifies as a member of that group; (3) the alleged 'social group' has been targeted for persecution based on the characteristics of the group members, and (4) 'special circumstances' justify per se eligibility for withholding of deportation or asylum based solely on membership in the social group. Sanchez-Trujillo v. INS, 801 F.2d 1571, 1574-75 (9th Cir.1986).
 
 
 14
 Rodriguez has shown that the Blue Ladies are an identifiable social group consisting of approximately four hundred members with "fundamental affiliational concerns and common interests," namely the organization of social and philanthropic events on behalf of Imelda Marcos. Id. at 1576. Rodriguez has further identified herself as a member of that group through her testimony and the photographs she submitted at her deportation hearing. However, Rodriguez has presented no evidence that the Blue Ladies have been targeted for persecution because of their activities. The Blue Ladies is not a political organization. The BIA's denial of withholding of deportation based on Rodriguez's membership in this organization was substantially reasonable.
 
 
 15
 We must also reject Rodriguez's argument that those closely connected with Ferdinand and Imelda Marcos are a 'particular social group' for purposes of 243(h). A group " 'may be so broad and encompass so many variables that to recognize any person who might conceivably establish that he was a member of this class ... would render the definition of "refugee" meaningless.' " Sanchez-Trujillo, 801 F.2d at 1577 (quoting the decision of the immigration judge). A group of those closely connected to the Marcoses would not be cognizable because it would be difficult, if not impossible, to determine what degree or type of connection would make someone a part of this group. To come within section 243(h) the group must be cohesive and homogenous. Id.; cf. Shoaee v. INS, 704 F.2d 1079, 1084 (9th Cir.1983) (close family connection with the Shah of Iran which resulted in loss of employment, travel restrictions and other hardships failed to establish prima facie case for asylum).
 
 
 16
 Rodriguez also failed to provide specific evidence that the alleged persecution resulted from her political beliefs. Bolanos-Hernandez, 767 F.2d at 1284. As noted above, the evidence demonstrates instead that the harassment Rodriguez experienced resulted from her connection to Dr. Jamora, rather than from her own political beliefs. The BIA's denial of Rodriguez's 243(h) claim is supported by substantial evidence.
 
 B. Asylum under Section 208(a)
 
 17
 The Attorney General has discretion under Section 208(a) of the INA, 8 U.S.C. § 1158(a) to grant political asylum if the alien is a refugee. Estrada-Posadas v. INS, 924 F.2d 916, 918 (9th Cir.1991). Refugee status is granted to those aliens who show "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); De Valle, 901 F.2d at 790. The well-founded fear standard used for asylum is less stringent than the clear probability standard used for withholding of deportation. Bolanos-Hernandez, 767 F.2d at 1288. In determining whether the well-founded fear standard has been met, we examine two factors: (1) whether the alien has a subjective fear of persecution, and (2) whether this fear has an objective basis that can be considered reasonable. De Valle, at 790. The subjective component of the well-founded fear standard "requires a showing that the alien's fear is genuine." Id. The objective component requires the alien to present "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." Estrada-Posadas, at 918.
 
 
 18
 Rodriguez contends that the BIA erred in refusing to grant her asylum under section 208(a) of the INA. We conclude that the BIA's decision was substantially reasonable, because Rodriguez failed to satisfy the objective prong of the well-founded fear standard.
 
 
 19
 "Mere irrational fear is not enough" to satisfy the well-founded fear standard. Cuadras v. INS, 910 F.2d 567, 571 (9th Cir.1990). "There must be a valid reason for the fear." Id. "Evaluating the seriousness of the threat to ... life involves a consideration of the past response of the guerrillas to those who politically oppose them." Bolanos-Hernandez, 767 F.2d at 1286. The threats Rodriguez received over the phone and the damage to her automobile and residence did not result in any physical harm to her. Rodriguez failed to present evidence that any one close to her or known to her was physically harmed or killed on the basis of his or her political beliefs or social affiliation with Ferdinand and Imelda Marcos. Rodriguez's fear of persecution is not reasonable. She has failed to present substantial evidence to satisfy the well-founded fear standard.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3