972 F.2d 1337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Raynaud CASTILLO-BENDANA, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 89-70494.
 United States Court of Appeals, Ninth Circuit.
 Argued April 9, 1991.
Submission Withheld May 14, 1991.
Submitted Jan. 15, 1992.
Decided Aug. 20, 1992.
 
 1
 Before HUG and POOLE, Circuit Judges, and ATKINS, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner Raynaud Castillo-Bendana petitions for review of an order of the Board of Immigration Appeals (BIA) affirming a decision of an Immigration Judge (IJ). The IJ denied Castillo-Bendana's applications for asylum and for withholding of deportation. Castillo-Bendana contends that the BIA incorrectly applied the test for determining whether an applicant has a "well-founded fear of persecution," as set forth in Cardoza-Fonseca v. INS, 480 U.S. 421 (1987), and that the BIA's decision that he is not eligible for asylum or withholding of deportation is not supported by substantial evidence. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), (c). We deny the petition for review.
 
 
 4
 * Castillo-Bendana is a native and citizen of Nicaragua. He entered the United States without inspection near San Ysidro, California on or about March 2, 1984. Two days later, the Immigration and Naturalization Service (INS) issued an order asking Castillo-Bendana to show cause why he was not deportable for entering the United States without inspection.[1] Castillo-Bendana conceded deportability at his deportation hearing, but the INS continued the hearing to permit Castillo-Bendana to file an application for asylum. In May, 1985, the Bureau of Human Rights and Humanitarian Affairs of the Department of State recommended against asylum, advising INS that Castillo-Bendana had not established a "well founded fear of persecution" if returned to Nicaragua. For purposes of this disposition we rely on the facts testified to by Castillo-Bendana at the subsequent continuation of his deportation hearing.
 
 
 5
 Castillo-Bendana first came to the United States as a student in 1978 and remained in the country for nine months. He is a member of a conservative faction of the Catholic church in Nicaragua, and asserts that this faction was discriminated against and harassed by the Sandinista government because it opposed the government's marxist ideology.[2] Castillo-Bendana asserted that Sandinista officials confiscated his food ration cards, painted threatening slogans on the walls of his home, and sent him written warnings that he was being watched. Castillo-Bendana rejected for political and religious reasons the government's pressure to join his local "Sandinista Defense Committee," or C.D.S., required public work programs, and the government-created Sandinista youth organization. Castillo-Bendana asserts that he was expelled from school because of his religious and political activities and that he became considered a "counter-revoluntionary" by the Sandinista regime. He testified that the head of his local C.D.S. threatened to report him to a superior official in 1982.
 
 
 6
 Castillo-Bendana's sisters attended Catholic secondary schools, and Castillo-Bendana asserts that they were later expelled from college because they opposed the Sandinista government and were members of the Catholic church. In his asylum request form, Castillo-Bendana asserted that one of his sisters was beaten after leaving a mass because the government disapproved of her religious convictions, and that her house was vandalized with painted slogans stating that she was a "counter-revolutionary."
 
 
 7
 While living in Nicaragua, Castillo-Bendana was employed by a privately-owned company that sold American products. He refused to join a labor union and never performed any military service. Castillo-Bendana testified that he expected to be drafted to fight in the government's then-existing war with the "contra" rebels, which he did not conscientiously support. Castillo-Bendana was never arrested by the Sandinista government and left Nicaragua with a proper exit visa, but he claims that he fears persecution for his departure because he has an friend who was investigated by the government after visiting this country.
 
 
 8
 The IJ found Castillo-Bendana deportable, denied his applications for asylum and withholding of deportation, and granted him thirty days in which to voluntarily leave the United States. On appeal, the BIA affirmed the IJ's decision, holding that Castillo-Bendana had failed to present sufficient evidence to establish a "well-founded fear of persecution" if he returned to Nicaragua. Castillo-Bendana timely petitioned for review, and we withheld submission pending the decision of an IJ on the applications of Castillo-Bendana's wife and daughter for asylum and withholding of deportation.[3] Those decisions have not yet been made.
 
 II
 A. Standard of Review
 
 9
 Our review is of the BIA's decision. If the BIA correctly affirmed the IJ's decision, then any error the IJ may have made is harmless. Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988). We review deferentially the question whether the BIA correctly concluded that the "well founded fear of persecution" standard was not met:
 
 
 10
 The BIA's determination that [Castillo-Bendana] was not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). It can be reversed only if the evidence presented by [Castillo-Bendana] was such that a reasonable fact-finder would have to conclude that the requisite fear of persecution existed. NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939).
 
 
 11
 INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992).
 
 
 12
 B. The "Well-founded Fear of Persecution" Standard
 
 
 13
 To be eligible for asylum, an alien must show that he has a "well founded fear of persecution on account of race, religion, nationality, membership in a social group or political opinion." 8 U.S.C. § 1101(a)(42)(A). To secure withholding of deportation, an alien must show "a clear probability of persecution," which means that it is more likely than not that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1253(h); INS v. Stevic, 467 U.S. 407, 430 (1984).
 
 
 14
 Thus, the standard required for asylum applicants is somewhat easier to meet than is that for withholding of deportation applicants. The asylum applicant need only show that he has a subjectively genuine and objectively reasonable fear of persecution. See INS v. Cardoza-Fonseca, 480 U.S. 421, 448 (1987). Once this threshold is established, the alien is considered a "refugee" and is eligible for asylum. Id. at 450. Of course, if the standard for asylum eligibility is not met, the alien is also not eligible for withholding of deportation. See Cardoza-Fonseca, 480 U.S. at 443.
 
 
 15
 C. Did the BIA Apply the "Subjective" Prong of the Cardoza-Fonseca Test?
 
 
 16
 Both the IJ and the BIA applied a "reasonable person" test to determine whether Castillo-Bendana was eligible for asylum. This test is based on In re Mogharabbi, Int.Dec. 3028 (BIA, June 12, 1987). There, the BIA held that whether an asylum applicant has shown a "well founded fear of persecution" must be "determined in the contexts of individual cases." Id. at 4. The BIA, however, also "adopt[ed] the general approach set forth by the [court in Guevara-Flores v. INS, 786 F.2d 1242 (5th Cir.1986), cert. denied, 480 U.S. 930 (1987) ]; that is, that an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution." Mogharabbi, Int.Dec. at 9 (emphasis added).
 
 
 17
 We have previously rejected the Fifth Circuit's approach:
 
 
 18
 [T]he term "well-founded fear" requires that (1) the alien have a subjective fear, and (2) that this fear have enough of a basis that it can be considered well-founded.... Applicants [for asylum] must point to specific, objective facts that support an inference of past persecution or risk of future persecution.... It is only after objective evidence sufficient to suggest a risk of persecution has been introduced that the alien's subjective fears and desire to avoid the risk-laden situation in his or her native land become relevant.
 
 
 19
 Cardoza-Fonseca v. INS, 767 F.2d 1448, 1452-53 (9th Cir.1985), aff'd, 480 U.S. 421 (1987). See also Abedini v. INS, No. 91-70038, slip op. 8849, 8853-54 (9th Cir., July 24, 1992); Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987). Accordingly, we have cautioned that the BIA's Mogharabbi standard must be applied consistently with this two-part test:
 
 
 20
 [I]t is not illegitimate for a test of "reasonableness" to enter into [an] appreciation of the alien's state of mind. But what is an objective circumstance must be determined in the political, social, and cultural milieu of the place where the petitioner lived.... Attention to the objective circumstance ... should not swallow up the primary focus ... on the subjective state of mind of the petitioner.... Belief is subjective. Fear is subjective. The trier of fact is to determine what th[e] particular petitioner believed and feared in the light of the objective circumstances the petitioner encountered.
 
 
 21
 Montecino v. INS, 915 F.2d 518, 521 (9th Cir.1990).
 
 
 22
 "Boiler-plate language" or "magic words" will not save the BIA's analysis if it is in fact legally incorrect. Arteaga v. INS, 836 F.2d 1227, 1231 (9th Cir.1988); see also Rebollo-Jovel v. INS, 794 F.2d 441, 444 (9th Cir.1986) (BIA may not protect its decision by "invoking a talismanic litany of words"). We therefore examine the analysis actually employed by the BIA to see whether it included both the subjective and objective inquiries that we mandated in Cardoza-Fonseca. Cuadras v. INS, 910 F.2d 567, 570 (9th Cir.1990).
 
 
 23
 We see no reason to offer any sweeping assessment as to the validity of the Mogharabbi standard in general because we believe the BIA considered Castillo-Bendana's subjective fears. Although neither the IJ nor the BIA made any specific findings as to Castillo-Bendana's subjective fears, the BIA stated that it was "not without sympathy for [his] plight" and that it was "understandable that [the Castillo-Bendana family] may find day-to-day life in Nicaragua extremely difficult." In addition, neither the IJ nor the BIA questioned Castillo-Bendana's credibility. We have previously held that failure to do so means that the "subjective fear" prong of the Cardoza-Fonseca test is met. See Cuadras, 910 F.2d at 571.
 
 
 24
 D. Was the BIA's Conclusion that no Objectively Reasonable Fear of Persecution Existed Supported by Substantial Evidence?
 
 
 25
 We give credibility to Castillo-Bendana's testimony that he fears persecution if he is forced to return to Nicaragua. See Canjura-Flores v. INS, 784 F.2d 885, 888-89 (9th Cir.1985) (applicant's testimony assumed credible if not questioned by IJ or BIA). However, we think the BIA correctly concluded that his fears are not objectively reasonable.
 
 
 26
 Castillo-Bendana's fear that he would face persecution because he avoided military service and might be drafted or punished for draft evasion is not generally considered persecution under the Immigration and Nationality Act. See Abedini, slip op. at 8854; Rodriguez-Rivera, 848 F.2d at 1005; Kaveh-Haghigy v. INS, 783 F.2d 1321, 1323 (9th Cir.1986) (per curiam). Nor can Castillo-Bendana's fear of persecution based on his residence in this country support a finding of objective reasonableness. Kaveh-Haghigy, 783 F.2d at 1323 (if this type of claim justified refugee status, "every citizen of a country unfriendly to the United States would be entitled to asylum").
 
 
 27
 As to Castillo-Bendana's membership in a conservative faction of the Catholic church, the subsequent surveillance of him, the vandalism of his home, his expulsion from school, the confiscation of his food ration cards, and his being labelled a "counter-revoluntionary," we think the BIA correctly concluded that Castillo-Bendana suffered discrimination and harassment but not persecution. We think it significant that the threats and harassment did not continue into the last years of his residence in Nicaragua. See Rodriguez-Rivera, 848 F.2d at 1006 (insufficient objective indication of well founded fear where applicant had lived undisturbed for two months before leaving country). We also think it important that Castillo-Bendana was not prevented from purchasing groceries, although he had to pay higher prices. See Saballo-Cortez v. INS, 761 F.2d 1259, 1264 (9th Cir.1984) (denial of food discounts and special work permit did not constitute persecution).
 
 
 28
 The C.D.S. officer's threat to report Castillo-Bendana to higher authorities apparently was never carried out. Thus, Castillo-Bendana was never subjected to a risk of arrest, confinement, or other more serious punishment for his political and religious views. Accordingly, the threat itself provides little support for Castillo-Bendana's application for asylum. See Turcios v. INS, 821 F.2d 1396, 1402 (9th Cir.1987) (persecution found where applicant was confined, tortured, watched continuously, and felt compelled to restrict activities although not arrested and permitted to leave country); Saballo-Cortez, 761 F.2d at 1264 (fact that applicant was never detained and permitted to leave country cast doubt on claim of well-founded fear of persecution).
 
 
 29
 The beating suffered by Castillo-Bendana's sister was an act of violence, and we are willing to assume for the purposes of this disposition that the vandalism of her home could also be so considered. However, these acts were not directed at Castillo-Bendana himself. Under similar circumstances we have previously required the applicant to show that some pattern of persecution closely tied to him existed. Arriaga-Barrientos v. INS, 925 F.2d 1177, 1180 (9th Cir.1991); Ramirez-Rivas v. INS, 899 F.2d 864, 867 (9th Cir.1990), vacated on other grounds, 112 S.Ct. 858 (1992); see Echeverria-Hernandez v. INS, 923 F.2d 688, 691 (9th Cir.) (isolated acts of violence insufficient to establish well-founded fear), vacated on other grounds en banc, 946 F.2d 1481 (1991). Castillo-Bendana has not made such a showing.
 
 
 30
 Nor can we find Castillo-Bendana's prior employment sufficient reason to consider him persecuted. The record indicates that the Nicaraguan government targeted only the employer, and not Castillo-Bendana, for his politically suspect activities, and the government permitted Castillo-Bendana to continue working without any incident even after he refused to cooperate in attempts to unionize workers. See Saballo-Cortez, 761 F.2d at 1264 (noting that this tends to undermine a persecution claim); cf. Elias-Zacarias, 112 S.Ct. at 816 (political viewpoint of asylum applicant, not alleged persecutor, relevant).
 
 III
 
 31
 The petition for review is DENIED. However, we hereby order the mandate stayed pending INS resolution of the applications of Mrs. Castillo-Bendana and the couple's daughter. The parties are directed to promptly inform the court when those applications are finally decided by the agency.
 
 
 
 *
 Hon. C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida
 
 
 **
 This disposition is not appropriate for publication and may not be cited by or to the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See 8 U.S.C. § 1251(a)(2)
 
 
 [2]
 The Sandinista National Liberation Front (FSLN) ("Sandinistas"), under the leadership of President Daniel Ortega Saavedra, led Nicaragua's government from 1979 to 1990. In April 1990, Violeta Barios de Chamorro, head of the United Nicaraguan Opposition--a coalition of parties opposed to the Sandinistas--became president of Nicaragua. The country's civil war between the then-ruling Sandinistas and the "contras" ended in 1990. J. Wright, The Universal Almanac 1991, at 407; see generally Castillo-Villagra v. INS, No. 90-70618, slip op. 8883, 8887 (9th Cir., July 27, 1992). The Sandinistas retain authority over Nicaragua's police and military. Castillo-Villagra, slip op. at 8887 (citing Joint Comm. on Foreign Affairs, Country Reports on Human Rights for 1990 ), S.Rep. No. 102-5, 102d Cong., 1st Sess. 701 (1991)). The BIA did not rely on these events in deciding Castillo-Bendana's requests for asylum and withholding of deportation since they occurred after his applications were submitted
 
 
 [3]
 After petitioning for review of the BIA's decision in this court, Castillo-Bendana asked the BIA to re-open his case. This motion, ultimately unsuccessful, does not deprive us of jurisdiction over the petition. See Castillo-Villagra, slip op. at 8893-94; Berroteran-Melendez v. INS, 955 F.2d 1251, 1254-55 (9th Cir.1992)