108 F.3d 1385
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Radu MATIS, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70416.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1997.*
Decided March 13, 1997.
 
 Before: SNEED, LEAVY, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Radu Matis, a native and citizen of Romania, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ)") denying his applications for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. §§ 1158(a) and 1253(h). We review for substantial evidence. Kazlauskas v. INS, 46 F.3d 902, 907 (9th Cir.1995). We have jurisdiction pursuant to 8 U.S.C. § 1105(a), and we deny the petition.
 
 
 3
 Matis contends that the BIA erred by finding that he failed to demonstrate a well-founded fear of future persecution based on his political opinion, imputed or real, and his relationship to his sister who defected to the United States.[1] We disagree.
 
 
 4
 Factual findings underlying the BIA's decision, including whether the alien has proven past persecution or a well-founded fear of future persecution, are reviewed for substantial evidence. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). Under the substantial evidence standard, we must uphold the Board's denial of asylum unless an alien demonstrates that the evidence he presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). To establish a well-founded fear of future persecution, applicants must show both a genuine subjective fear of persecution and an objectively reasonable fear. Acewicz, 984 F.2d at 1061. The objective component requires "a showing by 'credible, direct, and specific evidence' of facts supporting a reasonable fear of persecution" on account of one of the enumerated grounds. Id. (citation omitted).
 
 
 5
 Matis testified that beginning in 1983, after his sister left Romania to seek asylum in the United States, the Communist party focused its attention on Matis and his family.[2] Specifically, Matis and his family were subjected to periodic interrogation regarding the defection of his sister and their telephone conversations and mail were monitored. Matis further testified that his father was kicked out of the Communist Party, lost his job as a truck driver, and was forced into early retirement. Matis' brother also lost his membership in the Communist party as well as his job as a veterinarian and had to relocate to another city in order to secure employment. After Matis applied for a visa to visit his sister in the United States, he was demoted and had his salary cut in half. Matis subsequently secured a visa with the help of a United States senator. Matis testified that since his arrival to the United States, his family has been subject to repeated interrogations regarding his departure and that his phone calls and mail correspondence are monitored by the government. Matis' sister testified that she visited Romania in 1992 and was questioned about the whereabouts of her brother. She further testified that while driving with her brother-in-law they were pulled over by police and her brother-in-law was beaten and detained by the police based on his association with Matis' sister. Finally, Iordan Blanaru, a former citizen of Romania who has been granted asylum in the United States, testified that he also returned to Romania for a visit in 1992 and that he was followed during his entire visit. He further testified that the current Romanian government is even more violent and dangerous than the former government and that he believes Matis will be killed if he returns to Romania.[3]
 
 
 6
 We agree with the BIA's conclusion that Matis' failed to demonstrate that his fear of future persecution was objectively reasonable. See Cuadras v. INS, 910 F.2d 567, 571 (1990).[4] Matis' remaining family continue to reside in Romania, apparently without any harm. See Mendez-Efrain v. INS, 813 F.2d 279, 282 (9th Cir.1987) (applicant's asylum claim undercut by family's continued safety). Furthermore, while Matis testified to various incidents of employment discrimination, he failed to articulate any specific threats or incidents that would rise to the level of persecution. See Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir.1995) (distinguishing between persecution and mere discrimination and harassment); cf. Bolanos-Hernandez v. INS, 767 F.2d 1277, 1286 (1984) (applicant testified that guerrillas had threatened to kill him if he did not join them and that they had already killed five of his friends). While Matis submitted documentation suggesting that the new Romanian government may be no less oppressive than the former government, this evidence was insufficient to demonstrate that Matis would be subject to a "particularized threat of persecution." See Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994); see also Sanchez-Trujillo v. INS, 801 F.2d 1571, 1579 (9th Cir.1986).
 
 
 7
 Accordingly, we affirm the BIA's denial of asylum. Because the standard for withholding of deportation is higher than the standard for a grant of asylum, we similarly affirm the BIA's denial of withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 
 8
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Matis does not contest the BIA's finding that his past treatment did not amount to persecution. See Acewicz v. INS, 984 F.2d 1056, 1062 (1993) (noting that asylum may be granted based on past persecution alone where persecution is particularly "atrocious")
 
 
 [2]
 Because neither the IJ nor the BIA made an explicit finding regarding Matis' credibility, we must accept Matis' testimony as credible. See Hartooni v. INS, 21 F.3d 336, 342 (9th Cir.1994)
 
 
 [3]
 In 1989, the National Salvation Front ("the Front"), a political party declaring its goal to be a pluralistic democracy, overthrew Ceausescu and called for free elections. The Front was subsequently elected into power
 
 
 [4]
 Because neither the IJ nor the BIA questioned Matis' credibility, Matis satisfied his burden of demonstrating that his fear was "subjectively genuine." See Cuadras, 910 F.2d at 571