**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 13 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

———————————————

ROXANA PEREDA-ACOSTA,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 97-9508
(Petition for Review)
(No. A73 373 021)

———————————————

ORDER AND JUDGMENT[*]

———————————————

Before BRORBY, BARRETT, and BRISCOE, Circuit Judges.

———————————————

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

———————————

[*]      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner seeks review of a final order of the Immigration and Naturalization Service (INS) finding her deportable and denying her request for asylum or withholding of deportation.[1]  A stay of deportation was earlier granted pending the outcome of this petition for review.  Our jurisdiction over this matter arises under 8 U.S.C. § 1105a(a),[2] and we affirm.

Petitioner, a native and citizen of Peru, entered the United States on May 30, 1992, as a visitor.  In August of 1994, she was taken into custody by the INS and charged with deportability.  Petitioner denied deportability, and subsequently filed an application for asylum.  Following a hearing that concluded on April 18, 1995, the immigration judge (IJ) issued an oral decision finding petitioner deportable and ineligible for asylum.  The Board of Immigration Appeals (BIA) summarily affirmed that decision for the reasons given by the IJ.

---

[1]     The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, alters the availability, scope, and nature of judicial review in INS cases.  Because petitioner's deportation proceedings commenced before April 1, 1997, IIRIRA's permanent "new rules" do not apply to this case.  See id. § 309(c)(1).  However, because the order of the Board of Immigration Appeals was filed more than thirty days after IIRIRA's September 30, 1997 date of enactment, IIRIRA's "transitional rules" apply.  See id. § 309(c)(4); Berehe v. INS, 114 F.3d 159, 161 (10th Cir. 1997).  None of the transitional rules bar petitioner from seeking judicial review of the INS's final order in this case.

[2]     Section 1105a was repealed by § 306(b) of IIRIRA.  However, that repeal is not effective in cases such as this one where the transitional rules are in effect.  See IIRIRA § 309(c).

Where, as here, the BIA adopts the decision of the IJ, we review the IJ's decision. See Panrit v. INS, 19 F.3d 544, 546 (10th Cir. 1994).

## A. Deportability

The IJ found petitioner deportable on the grounds that she was excludable at the time of entry because she did not possess a valid immigrant visa and because she procured her entry with fraudulent documents. In so concluding, he relied on the testimony of an INS special investigator who interviewed petitioner after she was taken into custody. The investigator testified that, when he asked petitioner how she entered the United States, she told him that she bought someone else's passport for $2000 through an unknown agency in Lima, Peru and that her picture was "photo substituted." R. at 72. His testimony conformed to information on a form I-213 ("Record of Deportable Alien"), see id. at 214, which he prepared following the interview. The IJ discredited petitioner's testimony that the passport was her own, and that the $2000 payment to an agency in Lima was made on her behalf by relatives for her tickets and a visa.

"The government in deportation proceedings must establish its allegations by 'clear, unequivocal, and convincing evidence.'" Solis-Muela v. INS, 13 F.3d 372, 375 (10th Cir. 1993) (quoting Woodby v. INS, 385 U.S. 276, 285 (1966)). We review the agency's legal conclusions de novo and its factual findings to determine whether they are supported by substantial evidence. See id.

In her petition for review, petitioner challenges the quality of the evidence underlying the IJ's finding of deportability. First, she questions the reliability of the information contained in the I-213 due to the circumstances under which the form was completed.[3] The IJ based his finding, however, not on the I-213 itself, but on the investigator's testimony, simply noting that the I-213 conformed to his testimony. Furthermore, the record does not support the statement in petitioner's brief that, in testifying, the investigator "relied largely upon the written statements" on the form. Petitioner's Br. at 12. Upon inquiry, the investigator specifically testified that he had an independent recollection of the interview and, in particular, of petitioner's admission as to the photo-substituted passport. See R. at 77-78 ("It's not often that I hear somebody tell me that, you know, they had a photo-substituted passport. Something like that usually sticks in the mind pretty well."). Petitioner does directly challenge the reliability of the agent's testimony as well, claiming that it was "subject to minor inconsistencies." Petitioner's Br.

---

[3]    Petitioner's brief suggests that the circumstances give rise to the specter of possible difficulties in communication and possible errors in transcription. In particular, she notes (1) that the investigator admitted he was not fluent in Spanish and she is not fluent in English, and (2) that the investigator generated the official I-213 on a computer following the interview on the basis of an I-213 he completed by hand (in what the investigator characterized as "pretty bad" handwriting, id. at 74) during the interview.

at 12.  However, her single example cannot even be fairly characterized as an inconsistency.

Petitioner also challenges the IJ's decision to accept the investigator's testimony while discrediting her own.  She argues that the IJ's rationale for questioning her veracity is against the weight of the evidence, suggesting in her brief that his only basis for doing so was her proficiency in English at the time of the hearing.  We do not agree with this exegesis of the IJ's credibility determination.  While the IJ does appear to rely on petitioner's apparent proficiency in English to support his conclusion that a misunderstanding during the interview was unlikely, he also found it "difficult to believe that the [investigator] would simply pull this out of the air."  R. at 49.  This conclusion is supported by the record.  See id. at 73 (investigator's testimony that "[i]t doesn't do [him] any good to falsify a form like this.").  Furthermore, the IJ specifically found that "[t]he [investigator] appeared to be credible and businesslike in his report and in his testimony."  "[B]ecause the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight."  Dulane v. INS, 46 F.3d 988, 998 (10th Cir. 1995) (quoting Estrada v. INS, 775 F.2d 1018, 1021 (9th Cir. 1985) (further quotation

omitted)).  We see no reason on this record not to accept the IJ's credibility determination.[4]

Finally, petitioner argues that the evidence relied upon by the IJ is hearsay and, as such, should not be regarded as sufficient to establish deportability. Assuming, without deciding, that petitioner correctly characterizes the evidence as hearsay, we note that "evidentiary rules are not strictly applied at immigration hearings." Bauge v. INS, 7 F.3d 1540, 1543 (10th Cir. 1993).  "The test for admissibility of evidence in a deportation hearing is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law." Id. (quotation omitted).  We conclude that the evidence in question here was probative and its introduction was not fundamentally unfair. Therefore, the IJ did not err in relying on it.

## B.  Asylum

To be eligible for asylum, petitioner must first establish that she is a refugee under 8 U.S.C. § 1101(a)(42)(A).  See Rezai v. INS, 62 F.3d 1286, 1289

---

[4]      Petitioner argues that the judge did not have to conclude that only one of the parties was credible, but instead could have reconciled the testimony "[b]y accepting the proposition that a simple misunderstanding occurred at the initial interview or that a drafting error had crept into the computer-generated version of the form when the agent transferred his notes." Appellant's Br. at 13-14.  While it may be true that the testimony could have been reconciled, it is not relevant to our review.

(10th Cir. 1995). To do that, she "must prove either past 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Kapcia v. INS, 944 F.2d 702, 706 (10th Cir. 1991) (quoting 8 U.S.C. § 1101(a)(42)). "Fear of persecution is well-founded if it is subjectively genuine and objectively reasonable. The objective component requires [petitioner] to show a 'reasonable possibility of actually suffering . . . persecution if [she] were to return' to the country of persecution." Nazaraghaie v. INS, 102 F.3d 460, 462 (10th Cir. 1996) (citations and quotation omitted). Petitioner bears the burden of proving that she is a refugee. See Hadjimehdigholi v. INS, 49 F.3d 642, 647 (10th Cir. 1995); see also Rezai, 62 F.3d at 1289 (alien "must present specific, credible evidence to support his claim that he has been persecuted or will be persecuted if deported").

The basis of petitioner's asylum claim is her alleged fear of persecution by the Shining Path. In support of her application, petitioner testified that she and others in her family were longtime members of the Partido Aprista Peroano, a political party known for its opposition to the Shining Path. She said that for nearly seven years, she attended a university in Lima that was affiliated with the Partido Aprista, where she was active in the party and in the Affiliated Center of Visitation, a group that spoke out against the Shining Path and encouraged other students to join the Partido Aprista. She testified that her group was threatened

-7-

by the Shining Path, and she recalled the Shining Path taping dynamite to the doors to prevent people from attending the group's lectures and meetings. Petitioner further testified that, following her graduation, she taught school in her home village outside of Lima, where she continued to speak out in opposition to the Shining Path. Petitioner said that at the beginning of April in 1992, she received a threat from the Shining Path at her home, a note which said "[i]f you continue talking and if you continue teaching, you will be killed." R. at 96. Petitioner testified that she reported the threat to police and subsequently went into hiding for twenty-two days before coming to the United States.

The IJ concluded that petitioner failed to demonstrate a well-founded fear of persecution. He found that petitioner failed to show a fear of persecution that was nationwide, reasoning that

> [petitioner's] fear of persecution was in a small village which was rather primitive and which was in a remote location where government forces did not have much influence. The Shining Path did have influence. If the respondent were to change her teaching career and live in Lima or another city where there was military presence and a stronger police presence, it is quite unlikely that she would have to suffer such threats.

R. at 54. The IJ also noted that there were "some problems in the credibility of the case," citing petitioner's failure to file for asylum until after she was arrested by immigration officers more than two years after her arrival in the United States, and a letter from the school where petitioner was employed which indicates that

petitioner worked right up until she left the country. Finally, the IJ noted that petitioner did not give any corroborating evidence of her political affiliation and she had not shown that the Peruvian government is unwilling or unable to protect her in other areas of the country.

The IJ's finding that petitioner is not eligible for asylum "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quotation omitted). Reversal is appropriate only if the evidence presented is "such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id. at 481 & n.1.

Petitioner argues that the BIA erred in affirming the IJ's "implied conclusion" that she failed to establish past persecution.[5] Petitioner's claim of past persecution is based on her testimony that at the beginning of April 1992, she received a death threat at her home from the Shining Path, which drove her into hiding for twenty-two days before she fled to the United States for safety. As indicated above, the IJ questioned petitioner's credibility in this case because the record indicates that she taught right up until she left for the United States, and that she sought asylum only after she was arrested and faced possible deportation.

---

[5]     Petitioner does not argue in her brief that the absence of an explicit finding as to past persecution constitutes error, and thus we do not consider that argument in this appeal.

He also noted that the exhibit which, according to petitioner, corroborates her testimony,[6] was neither authenticated by the American Consul nor by any other agency. Mindful that it is not our responsibility to weigh the evidence or evaluate the credibility of witnesses, see Kapcia, 944 F.2d at 707, we conclude that substantial evidence supports the IJ's rejection of petitioner's claim of past persecution.

Petitioner also challenges the IJ's conclusion that she could live in Lima or another metropolitan area free of persecution by the Shining Path. She maintains that "[t]he overwhelming weight of evidence establishes that although the Shining Path may be strongest in rural areas, it continues to perform terrorist acts within the capital of Lima and other metropolitan areas." Petitioner's Br. at 11. While petitioner is correct that the record includes newspaper accounts of terrorist activity in Lima, the reported activity involves detonating bombs in public places and near government and military facilities. See R. at 162 (embassies, police stations, electric power stations), 171 (banks, police and military facilities), 180 (power pylons, recently privatized telephone companies, banks, electricity

---

[6] We note that the document, which is purportedly a copy of the police report filed by petitioner following the threat, does not directly corroborate petitioner's testimony. It speaks not of a single threat received by petitioner in April of 1992, but instead indicates that sometime in 1992, petitioner complained that she was "continually receiving anonymous calls as well as letters" from the Shining Path. R. at 123.

repeater station, government telecommunications training center); see also id. at 189 (where State Department's 1995 country conditions profile of Peru indicates that "[i]n the countryside, the guerrillas have killed members of self-defense forces, community leaders, and political party members, while in urban areas, they often use car bombs and other explosive devices in their campaign of terror.") Although regrettable, these kinds of activities cannot establish eligibility for asylum. See Figeroa v. United States, INS, 886 F.2d 76, 80 (4th Cir. 1989) (eligibility for asylum requires evidence that "the alien's predicament is appreciably different from the dangers faced by the alien's fellow citizens" (quotations omitted)).

Our review of the record in this case reveals substantial evidence to support the IJ's conclusion that any danger to petitioner is geographically limited. See generally Cuadras v. United States, INS, 910 F.2d 567, 571 n.2 (9th Cir. 1990) (evidence that danger is geographically localized and could be avoided is relevant to the question of the existence of a well-founded fear of persecution). Most compelling is the evidence from petitioner herself. She testified at the hearing that she was active in her opposition to the Shining Path while at the university in Lima for nearly seven years and yet was never personally threatened. See R. at 90, 91-92, 109. She admitted that "[s]ince they caught the leader of the Shining Path, things are controlled . . . in the downtown." Id. at 97. In her

application for asylum, petitioner focuses on the risk of persecution she faces in her home village because it is a "Shining Path stronghold," and she and members of her family "'stand-out'" there as opponents to the Shining Path. Id. at 195. She alleges that "[i]f I returned to Peru, especially if I returned to my home village and district, I would be remembered as an opponent of the Shining Path." Id. Deportation would not require petitioner to return to her home village, however, and she has not demonstrated that she faces a risk of persecution in other areas of Peru. Furthermore, the State Department, in its 1995 country conditions profile of Peru, recognizes relocation within Peru as a viable option. See id. at 191 (stating that "internal relocation" is available to many Peruvian asylum applicants because there is "no evidence that a nationwide guerrilla information network for tracking perceived opponents exists"). On this record, we cannot conclude that "a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Elias-Zacarias, 502 U.S. at 481.

Our conclusion that substantial evidence supports the IJ's determination that petitioner did not establish a well-founded fear of persecution is fatal to petitioner's claim for withholding of deportation, as well. See Casteneda v. INS, 23 F.3d 1576, 1578 (10th Cir. 1994).

The petition for review is DENIED, and the BIA's summary dismissal is AFFIRMED. The stay of deportation heretofore entered by this court is VACATED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge