MATTER OF LUM

In Visa Petition Proceedings

A-12990643

*Decided by Board October 19, and December 31, 1964*

Petition of an adult naturalized United States citizen, who was adopted in China during infancy, is approved to accord her natural mother preference quota classification under section 203(a)(2), Immigration and Nationality Act, as amended, notwithstanding the proviso to section 101(b)(1)(E) of the Act, since petitioner—who entered this country not as an adopted child but as the nonquota wife of a U. S. citizen and whose adoptive father is dead and her adoptive mother, not having been heard from in many years, is presumed dead—has received no immigration benefit through her adoptive status and as a matter of either law or fact is in no position to claim such benefit through that status.

BEFORE THE BOARD

Petitioner, a native of China and a naturalized citizen of this country, seeks second preference quota status for her natural mother. The District Director has revoked the visa petition which petitioner filed for that purpose.

A short time after petitioner's birth a family that lived near her village in China adopted her because her mother was ill. The Service approved the petition with knowledge of petitioner's adoptive status. An immigration officer, who interviewed petitioner preliminarily to the revocation of the petition, said that the approval was erroneous.

The District Director's decision rests upon his conclusion that the Immigration and Nationality Act provides that the natural parents of an adopted child shall (by virtue of such parentage) be accorded no rights, privileges, or status under the Act. We think his statement inaccurately reflects the statutory provision. Our reasoning agrees substantially with petitioner's brief in support of her appeal.

55

The pertinent portion of the statute reads:[1]

As used in titles I and II—The term "child" means an unmarried person under twenty-one years of age who is—

* * * * * * *

(E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: *Provided*, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act.

* * * * * * *

Manifestly, the inclusion of an adopted child in the definition of the term "child" seeks to provide some immigration benefit for the child through his relationship to his adoptive parent or parents. The immediate purpose is to enable an adopted child, who meets the section's conditions and who otherwise could not immigrate because of quota restrictions, to accompany his adoptive parent or parents to this country, or to join such parent or parents here. Reading the section as a whole, instead of considering only the language of subparagraph (E), makes clear the section's intended scope.

In referring to "such adopted child" the *proviso* obviously means an adopted child who under the terms of the section is eligible for— or has obtained—an immigration benefit. The effect which the District Director gives to the *proviso* overlooks the significance of the word "such." If, as his decision holds, the statute precludes the natural parent of any adopted child from obtaining by reason of blood relationship to that child any right, privilege, or status under the Act, the *proviso* should omit the word "such" and read:

*Provided*, That no natural parent of any adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act.

Thus, both the section as a whole and the *proviso* refer to an adopted child in relation to eligibilty through adoption for some immigration benefit, rather than either adopted children in general, or, specifically, children who have been adopted while under the age of 14, have thereafter been in the legal custody of, and resided with, the adoptive parent or parents for two years or more, but who have received no immigration benefit thereby.

Petitioner came to this country not as an adopted child but as the wife of a United States citizen. She is now 48 years old. Her counsel says her adoptive father died in China about 1951 and her

---

[1] Section 101(b)(1)(E), Immigration and Nationality Act, added by Act of September 11, 1957, 71 Stat. 639, 8 U.S.C. 1101(b)(1)(E).

adoptive mother has not been heard from in many years and is presumed dead.

In *Matter of B—*, cited by petitioner's counsel, we held that an adopted child who as a matter of law could not obtain through the adoption any immigration right, privilege, or status could confer second preference quota status upon her natural parents.[2] Here, petitioner did not obtain any immigration right, privilege, or status through her adoption and as a matter of fact could not now obtain any immigration benefit from that status. We see no appreciable difference in the two situations.

We consider the *proviso* in subparagraph (E) of the definition of the term "child" for purposes of titles I and II of the Act is inapplicable when an adopted child has received no immigration benefit from his adoptive status and as a matter of either law or fact is in no position to claim such benefit. Therefore, we hold that petitioner's adoption is immaterial here and does not affect beneficiary's eligibility for classification as a second preference quota immigrant based upon her alleged blood relationship to petitioner.[3] We shall sustain the appeal.

ORDER: It is ordered that the District Director's decision revoking the petition to classify status of alien relative for issuance of immigration visa filed by petitioner for her natural mother be reversed and that the petition stand as approved.

### BEFORE THE BOARD

The Service moves for reconsideration of our order of October 19, 1964, which reversed the District Director's decision revoking approval of the visa petition filed in behalf of petitioner's mother.[1] Counsel for the Service contends section 101(b)(1)(E) of the Immigration and Nationality Act bars approval of the petition. The District Director took the same position in his decision. We adhere to our previous ruling.

The Service's counsel's concern with the statutory prohibition has led him into the same error which the District Director committed— interpreting the statute mechanically and unrealistically. What we said in our previous order about the scope of section 101(b)(1)(E) applies with equal force to this motion. That statutory provision simply has no applicability here.

[2] 9 I. & N. Dec. 46.

[3] We note, moreover, that this record fails to establish that petitioner was legally adopted under Chinese law.

[1] The motion seeks also reopening of the proceedings for the presentation of further evidence. We shall consider this aspect later.

We believe the following hypothetical situations point up that inapplicability. In each we assume the factual situation here, as set forth in our previous order, except that we vary the facts with respect to the adoption. We also assume that the adoption in each case is valid under Chinese law and that the adoptive parents are deceased.

Case A. Petitioner was adopted when over the age of 14 years.[a]

Case B. Petitioner was adopted when under the age of 14 years but following the adoption resided with them for less than two years.

Case C. Petitioner, as here, was adopted when under the age of 14 years and following the adoption was in the legal custody of the adopting parents, and resided with them for two years or more.

Apparently, the Service would approve petitions for petitioner's natural mother in Cases A and B but deny such a petition in Case C. In the circumstances we have assumed, however, we discern no special magic in the fact that the situation in Case C happens to fit the language which immediately precedes the *proviso* in section 101(b)(1)(E). That language was not designed for the situations we envisage. It limits the situations in which an adopted child may benefit under the immigration laws through its relationship to its adoptive parents. Congress particularized the adopted child who might so benefit in order to forestall use of the provision simply as a means of evading other provisions of the law. Thus, the language which precedes the *proviso* loses its force when considered out of the context of the adoptive relationship. In our situations, that language has never been applied—and could not be applied—to accord any status under the immigration laws. Therefore, the language should have no more significance in one of the situations than in the others.

In the *proviso*, Congress particularized the natural parent in the same manner. The *proviso* does not preclude a petition by any adopted person for a natural parent. It precludes such a petition only if the petitioner has obtained a benefit under the immigration laws, or may obtain some benefit under those laws, by reason of his adopted status. Such person must, of course, qualify under the language preceding the *proviso* in order to be eligible for the benefit. We consider, however, the language of the *proviso* also loses its force where the adopted person, even though mechanically qualifying under the definition, has never used, and never could use, his qualifications for immigration purposes. Thus, looking at the statutory provision as a whole, petitioner's adoption under circumstances

---

[a] Essentially, this was the situation in *Matter of B—*, 9 I. & N. Dec. 46.

which meet the statutory requirements in the definition of an adopted child is immaterial for the purposes here considered.

In addition to applying section 101(b)(1)(E), erroneously, the Service's motion misconstrues the effect of our decision. We believe the Service's difficulty arises primarily from misstatement of the issue. The motion states the issue to be whether a child, who in all respects comes within the definition of an adopted child in the immigration and Nationality Act, can have a visa petition approved for her natural parent on the ground that the child had not gained a benefit under the immigration laws by reason of the adoption. As we have seen, petitioner does not "in all respects" come within the definition of an adopted child in the Immigration and Nationality Act. Actually she does not come within it at all.

Assuming that petitioner was legally adopted, the circumstances of her adoption merely coincide mechanically with the conditions imposed by the definition. Moreover, the criterion here is not that the adopted person has not at the time of petitioning already obtained a benefit under the immigration laws. Our decision contemplates that petitioner not only has not gained a benefit under the immigration laws through her adoption but could not now or ever obtain such a benefit. Both conditions must be present.

We believe the foregoing statement disposes of the Service's contention that our holding permits an adopted child to have greater rights than a natural child in that the adopted child could petition for two sets of parents and two sets of brothers and sisters. We need not discuss the Service's suggestion that petitioner might be considered to make an election in favor of the natural parent—although the motion urges that an adopted person should not have an election. There is no election here. Beneficiary is the only mother petitioner now has. The possibility that petitioner might someday be in a position to petition for her adoptive mother is so remote that it can have no part in any realistic appraisal of the situation.

The motion suggests that our original decision should have been based upon the failure of the record to show petitioner has been legally adopted under Chinese law and urges that we remand the case for further evidence on this point. The petition was initially approved on October 15, 1962. Beneficiary is now over 74 years old. Although we noted in our original decision that the record did not properly develop petitioner's adoptive status, we were not disposed to remand the case to overcome deficiencies we considered to be immaterial. If anything, we are less disposed to do so now.

Finally, the Service declares that our order of October 19, 1964 departs from our other decisions relating to section 101(b)(1)(E). The motion attaches significance to our resting our decision in *Matter of B—* upon the age of the child at the time of adoption rather than the child's nonacquisition of any benefits under the immigration laws through the adoption.[3] We see no such significance. The situation merely presented an obvious basis for decision apart from any question of benefits arising from the adoption. Moreover, the case was before us on certification to consider the District Director's decision approving the petition. Apparently, the District Director reached his decision because of petitioner's age when adopted.

The motion also cites *Matter of Martinelli*, unpublished.[4] There, we first approved a petition by a mother for her natural daughter, who had been adopted in Italy at the age of 17. We noted that beneficiary was over 14 years of age when adopted but preferred to rest our decision upon the failure of any immigration status or benefit to result from the adoption. The Service moved for reconsideration of our order. On reconsideration we found to be appropriate adoption of the doctrine of *Matter of B—*, which had been decided subsequent to our original order in *Martinelli* and just a few days before the Service's motion. Therefore, we concluded that the petition should be approved on the basis of petitioner's daughter's age at the time of adoption. Our final action in *Martinelli*, did not necessarily repudiate the previous basis for our decision. As in *Matter of B—*, we simply used another, and perhaps then more convenient, basis for decision.

In the present motion, counsel for the Service attributes to *Matter of B—*, the rule that the determining factor is whether the child comes within the statutory definition of an adopted child. Although we do not find this specific language in either *B—* or *Martinelli*, we believe it may be a fair statement of the rule, but only if properly understood. For example, as we have emphasized, we consider petitioner here does not "come within" the statutory definition of an adopted child.

In *Matter of K—*, discussed also in the Service's motion, we held that, because of the provisions of section 101(b)(1)(E), an adoption at the age of two years precluded the natural parent of the adopted child from asserting any right, privilege or status with respect to the child.[5] The natural mother, a permanent resident of this country,

---

[3] *Supra* [2].
[4] A-11490302, decided October 19, 1960.
[5] 9 I. & N. Dec. 116.

had filed the visa petition. The opinion is brief and contains no facts about the adoptive parents. Nothing indicates whether we considered the possibility of disregarding the adoption on any basis. Some of the language in the opinion is quite broad and must be read in the light of our statements in other matters involving the definition of an adopted child for immigration purposes—including our opinion here. We do not consider *Matter of K*— to be inconsistent with our present holding. The circumstances in which that opinion was rendered do not sufficiently appear to determine whether there is any conflict.

*Matter of S*—, in which petitioner had been adopted at 13 years of age and was petitioning for his natural parents, must also be read in the light of our ruling here.[6] The statement from *Matter of S*— quoted in the Service's motion—to the effect that the adoption changed, for immigration purposes, petitioner's preadoption relationship to his natural parents applies in many, if not most situations, but not in all.

None of the decisions which we have discussed squarely meet the question of the applicability of section 101(b)(1)(E) where the adoptive parents are deceased, or presumed deceased. In *Matter of B*— the adoptive parents, who were petitioner's aunt and uncle were living in Arizona. Martinelli's adoptive parents—again an aunt and uncle—were living in Italy. *Matter of K*— does not reveal whether the adoptive parents were alive or dead. The adoptive parents in *Matter of S*— were living in New York City.

Although we answered the Service's motion when we pointed out the inapplicability here of the statutory definition of an adopted child, we have discussed it at some length in an attempt to overcome much apparent confusion concerning the effect of the definition. Upon cursory reading, the provision appears to support the Service's position. The District Director—as well, apparently, as the consular officer who returned the approved petition to the Service for consideration under the definition—labored under the same misapprehension as the Service's counsel here. We have not previously had occasion to consider the precise situation now before us. As a result, some of the language of our prior opinions has not served to dispel confusion of thought in this area.

We affirm our order of October 19, 1964. *Matter of B*—, *supra*, laid down the rule that an adopted child who could not benefit by the adoption under the immigration laws because not within the definition of an adopted child under section 101(b)(1)(E) was not dis-

___

[6] 9 I. & N. Dec. 567.

qualified by the proviso to that sub-section from receiving the benefit from his natural parents. Our present decision holds that the prohibition contained in the proviso also has no application where an adopted child has received no benefit under the immigration laws through the adoptive parent or parents and cannot in the future receive such a benefit, as in the instant case where the adoptive parents are dead (the death of one is proved; the death of the other is presumed). Hence, there is no reason for not approving the petition for the natural mother of the petitioner. We deny the motion.

**ORDER:** It is ordered that the Service's motion be, and hereby is, denied.