# In re XIU HONG LI, Beneficiary of visa petition filed by BAO YI XU, Petitioner

### File A72 134 165 - Northern Service Center

*Decided April 19, 1995*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) If the provisions of section 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(E) (1988), have been invoked in order to obtain or confer an immigration benefit by virtue of an adoptive relationship, the natural relationship will not thereafter be recognized for immigration purposes even if it is established that the adoptive relationship has been legally terminated.

(2) A natural parent-child relationship can again be recognized for immigration purposes following the legal termination of an adoption meeting the requirements of section 101(b)(1)(E) of the Act if the petitioner can establish the following four criteria: (1) that no immigration benefit was obtained or conferred through the adoptive relationship, (2) that a natural parent-child relationship meeting the requirements of section 101(b) of the Act once existed, (3) that the adoption has been lawfully terminated under applicable law, and (4) that the natural relationship has been reestablished by law.

FOR PETITIONER: Allen R. Freedman, Esquire, Chicago, Illinois

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA and HEILMAN, Board Members; HOLMES, Alternate Board Member

HOLMES, Alternate Board Member:

On April 22, 1993, a Regional Service Center ("RSC") director denied the visa petition filed by the United States citizen petitioner on behalf of the beneficiary for preference status as his unmarried daughter under section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(1) (Supp. V 1993). The RSC director certified his decision to the Board of Immigration Appeals. The record will be remanded for further consideration.

The petitioner filed a visa petition on behalf of the beneficiary, a 22-year-old native and citizen of the People's Republic of China, on December 9, 1992, asserting that she is his natural daughter. In support of the visa petition, the petitioner submitted a number of certified copies of Chinese notarial certificates, accompanied by English-language translations, the most

pertinent of which are the following: a statement that the beneficiary was born on March 3, 1971, to her natural father, Xu Bao Yi, and her natural mother, Chen Xue Yan; a statement that the petitioner and Chen Xue Yan were married on August 24, 1964; and, a statement that the beneficiary was adopted on March 3, 1971, by her adoptive father, Li Meng Yang, and adoptive mother, Cai Pei Ying, but that the adoptive relationship established between them was terminated under Chinese adoption law on October 20, 1992.

The RSC director denied the visa petition on April 22, 1993. He concluded that the October 20, 1992, order renouncing the adoptive relationship did not reestablish the natural relationship between the petitioner and beneficiary for immigration purposes since the adoption had irrevocably severed the natural parent-child relationship. He stated that it "was within the realm of future possibility that this adopted beneficiary could receive from, or confer to, her adoptive parents an immigration benefit." Therefore, the RSC director concluded, approval of the visa petition filed by the beneficiary's natural father was barred under the "proviso" of section 101(b)(1)(E) of the Act, 8 U.S.C. § 1101(b)(1)(E) (1988). As noted, the RSC director certified his decision to the Board.

The threshold question facing the Board in this case is whether the natural relationship between a parent and child is *irrevocably* severed when a child is adopted through an adoption that satisfies the requirements of section 101(b)(1)(E), even if that adoption subsequently is lawfully terminated. If not, under what circumstances could the natural relationships be recognized again for immigration purposes?

## I. STATUTORY LANGUAGE AND BOARD PRECEDENT REGARDING ADOPTIONS

Section 101(b)(1) of the Act defines the term "child" for immigration purposes, in pertinent part, as follows:

The term "child" means an unmarried person under twenty-one years of age who is -

(A) a legitimate child;

. . . .

(E) a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: *Provided*, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act . . . .

This Board recently has addressed the effect of an adoption that meets the requirements of section 101(b)(1)(E) of the Act on natural relationships for immigration purposes. In *Matter of Li,* 20 I&N Dec. 700 (BIA 1993), we held that an adoption which satisfies the requirements of section 101(b)(1)(E),

whether or not an immigration benefit has been accorded or could be accorded by virtue thereof, precludes a natural parent of any such adopted child from being accorded any right, privilege, or status under the Act because the adoption severs the relationship between the child and his or her natural parents for immigration purposes. In so holding, we overruled our prior decisions of *Matter of Lum,* 11 I&N Dec. 55 (BIA 1964), and its progeny, *Matter of Valsamakis*, 12 I&N Dec. 421 (BIA 1967), and withdrew from certain language in *Matter of Kirby*, 13 I&N Dec. 173 (BIA 1969).

We concluded that the plain language of the "proviso" to section 101(b)(1)(E) restricted the rights of natural parents once an adoption took place which met the age, custody, and residence requirements of that section, without regard to whether an immigration benefit had been accorded or could be accorded by virtue of that adoption.

## II. TERMINATION OF ADOPTIVE RELATIONSHIPS

Regarding the effect for immigration purposes of a lawful termination of an adoption, we initially note that nowhere does the explicit language of the statute, in section 101(b)(1)(E) or elsewhere, address such a circumstance. Nor did our decision in *Matter of Li, supra,* involve a situation where an adoption had been terminated. Thus, in *Li*, we did not address the question faced in the present case. We simply determined that there are situations where the status of "parent," once established, may be terminated, as through an adoption meeting the requirements of section 101(b)(1)(E).

This Board, however, has previously dealt with the question of what effect a termination of adoption has on the adoptive relationships. In *Matter of Kong*, 17 I&N Dec. 151 (BIA 1979), we found that an alien whose adoption had been terminated could no longer confer or obtain immigration benefits based on the adoptive relationship.[1] In that case, we found that the petitioner and the beneficiary, who had previously been related as siblings through adoption, no longer shared a common parent after the petitioner's adoptive relationship with the beneficiary's natural parents had been severed. Thus, the petitioner and beneficiary no longer qualified as siblings under the Act. *Id.* at 153. By making that determination, we recognized that there are situations where the status of "parent," including the status of adoptive parent, may be terminated. *Id.* However, *Matter of Kong* dealt only with the issue of what effect a termination of adoption had on the adoptive relationship. We

---

[1] We consider, therefore, incorrect as a matter of law the RSC director's finding that, assuming the lawful termination of the beneficiary's adoption, the beneficiary's adoptive relatives could conceivably receive or confer an immigration benefit at some point in the future. Our decision in *Matter of Kong, supra,* would preclude an immigration benefit from being obtained through the adoptive relationship once the adoption has been lawfully terminated.

made no specific finding in *Kong* regarding the termination's effect on the prior natural relationships.[2]

It might be argued that our reasoning in *Matter of Li, supra*, could be extended to apply to all situations where an adoption has occurred meeting the statutory requirements under section 101(b)(1)(E) of the Act, leading to the conclusion that the natural relationship is severed irrevocably from the point of the adoption on. However, we do not believe that such a result is either required by statute or serves the purposes underlying the immigration laws. It does not appear that Congress, in drafting section 101(b)(1)(E), was contemplating the situation where an adoption might be legally terminated, particularly in a context where no immigration benefits had resulted from that adoption. Rather, it appears that Congress, in drafting section 101(b)(1)(E), contemplated the existence of an ongoing adoptive relationship. Its intent in including the "proviso" was to ensure that a child could be recognized as a child of his natural parents or of his adoptive parents, but not of both. *See Matter of Li, supra,* at 705 (citing H.R. Rep. No. 1199, 85th Cong., 1st Sess. (1957), *reprinted in* 1957 U.S.C.C.A.N. 2016).

Moreover, to rule that natural relationships never could be recognized again *under any circumstances* for immigration purposes following the legal termination of an adoption could lead to patently unjust results, which we are confident would not have been intended by Congress. For example, a minor child could be separated from his or her natural parents and adopted due to a mistaken belief that he or she had been orphaned. The parents could later reappear, the adoption be terminated, and the natural parental relationship be reestablished while the child is still a minor under circumstances where there was obviously no fraud or attempt to manipulate the immigration laws. By extending the reasoning of *Matter of Li* to such a situation, the alien would be rendered "parentless" under the immigration laws, since the effect of *Matter of Kong* would be to bar all future recognition of the adoptive parent-child relationship for immigration purposes. In such a situation, to conclude that the natural parental relationship had been severed irrevocably and could not be recognized for immigration purposes under any circumstances would distort rather than further the purposes of the Act.

Thus, we conclude that the language of the statute was not intended to address the specific situation before us. And, we decline to find that the natural relationship between a parent and child is *irrevocably* severed under all circumstances when a child is adopted through an adoption that satisfies the requirements of section 101(b)(1)(E), even if that adoption subsequently is lawfully terminated.

---

[2] In *Matter of Kong, supra,* we noted that the petitioner had immigrated to the United States on the basis of a visa petition filed by her natural mother after her prior adoption had been terminated, thus implicating that her relationship with her natural mother had been reestablished for immigration purposes.

## III.  STANDARD TO BE APPLIED WHERE ADOPTION TERMINATED

Under what circumstances could natural relationships be again recognized, for immigration purposes, if an adoption is legally terminated? The petitioner essentially argues on appeal that once an adoption has been terminated, the natural relationship is automatically reestablished as if the adoption had never taken place. In support of this argument, he urges that our decision in *Matter of B-,* 9 I&N Dec. 46 (BIA 1960), is controlling.  He maintains that, where an adoption has been legally terminated, the effect is the same as though the adoption had never existed. Therefore, the section 101(b)(1)(E) "proviso" would not preclude an immigration benefit based on the natural relationship.

We cannot agree that *Matter of B-, supra,* controls the issue before us. That case involved an adoption which did not meet the requirements of section 101(b)(1)(E) of the Act because the alien was adopted after the applicable age limit set forth in that section. The natural relationship, therefore, never terminated for immigration purposes because the adoption was not recognized for immigration purposes.  The situation before us is distinguishable, however, because there has been a qualifying adoption that did sever the natural relationship.  The question that remains is whether, after the termination of an adoption, the natural relationship may be recognized for immigration purposes.  Consistent with the language and purposes of the Act, we find that it can be under certain circumstances.

First, we find that if the provisions of section 101(b)(1)(E) of the Act have been invoked in order to obtain or confer an immigration benefit by virtue of the adoptive relationship, the natural relationship cannot again be recognized for immigration purposes even if it is established that the adoptive relationship has been legally terminated. To conclude otherwise would seriously contravene the congressional intent reflected in the "proviso" of section 101(b)(1)(E). Moreover, this finding is consistent with the concept that an alien should be recognized for immigration purposes as a child of his natural parents or of his adoptive parents, but not of both.  *See Matter of Li, supra,* at 704. Thus, once an immigration benefit has resulted from an adoptive parent-child relationship, the natural parent-child relationship cannot again be recognized under the provisions of section 101(b) of the Act.

We find, however, that a natural parent-child relationship can be again recognized for immigration purposes following the termination of an adoption if the petitioner can establish that the following four criteria are met. First, a petitioner must demonstrate that no immigration benefit was obtained or conferred as a result of the adoptive relationship. Secondly, it must be demonstrated that a natural parent-child relationship meeting the requirements of section 101(b) once existed.  Thirdly, it must be demonstrated that any subsequent adoption that satisfied the requirements of section

101(b)(1)(E) has been lawfully terminated under the applicable law. Finally, the petitioner must demonstrate that his or her natural relationship with the beneficiary has been reestablished, either through operation of law or through other legal process (i.e., we do not assume that natural relationships are automatically reestablished solely by virtue of the fact that an adoption has been lawfully terminated).

## IV.  APPLICATION OF THE STANDARD TO THIS CASE

The evidence before us reflects that this beneficiary's adoption in 1971 met the requirements of section 101(b)(1)(E) of the Act. Therefore, under *Matter of Li, supra*, her relationship with her natural parents was severed by virtue of that adoption. Accordingly, for the present visa petition to be approvable, the petitioner must demonstrate by a preponderance of the evidence that the four criteria discussed above are met.

There would not appear to be any dispute regarding the first three requirements. There is no evidence or claim that the beneficiary obtained or conferred any immigration benefit through her adoptive relationship with Li Meng Yang and Cai Pei Ying. The petitioner has also presented evidence that the beneficiary was his legitimate biological child and, as such, once met the definition of child contained in section 101(b)(1)(A) of the Act.  The petitioner has presented adequate evidence that the beneficiary's adoption was properly terminated on October 20, 1992, under applicable Chinese law.[3]

Finally, with respect to the fourth requirement, we note that the petitioner has presented evidence on appeal regarding the legal effect of the termination of adoption, which consists of a translation of pertinent sections of Chinese law regarding adoptions. Specifically, the Adoption Law of the People's Republic of China, Chapter IV, Article 28, states as follows:

> After the abrogation of adoptive relationships, the rights and obligations between the adopted child and the adoptive parents or other close relatives shall terminate immediately, and those between the adopted child and its biological parents or other close relatives shall resume.  The resumption of rights and obligations between an adult adopted child and its biological parents or other close relatives, however, shall be effected by negotiation.

Ordinarily, we would not consider evidence first offered on appeal. *See Matter of Soriano,* 19 I&N Dec. 764 (BIA 1988); *Matter of Obaigbena,* 19 I&N Dec. 533 (BIA 1988).  However, in this instance the issue to which this evidence pertains was understandably not focused on below, inasmuch as no standard had yet been articulated regarding the treatment of terminations of adoption for immigration purposes.  In light of our decision, accordingly, we

---

[3] The RSC director apparently accepted the termination as legally valid and based his decision solely on the effect to be given that termination.  We note that the petitioner submitted a translation of the applicable Chinese law regarding adoptions, which appears to confirm that an adoption may be terminated, as was done in this case.

find it appropriate to remand this matter to the RSC director to allow the petitioner a full and fair opportunity to meet his burden of establishing that the natural parental relationship has been reestablished under Chinese law such that it can be recognized for immigration purposes.

Accordingly, this matter will be remanded to the RSC director for further consideration of the visa petition.

**ORDER:** The record is remanded to the RSC director for further consideration of the visa petition consistent with the foregoing opinion, and for the entry of a new decision.