**Ramon RAMIREZ–ALEJANDRE, Petitioner,**

v.

**John ASHCROFT,\* Attorney General of the United States of America, Respondent.**

No. 00–70724

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 7, 2001\*\*

Filed Jan. 9, 2002

---

\* John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General of the United States, Fed. R.App. P. 43(c)(2).

\*\* The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Jonathan M. Kaufman, San Francisco, California, for the petitioner.

Michael T. Dougherty, Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for the respondent.

Before: FERNANDEZ, RYMER, and WARDLAW, Circuit Judges.

Opinion by Judge RYMER; Dissent by Judge WARDLAW

RYMER, Circuit Judge:

Ramon Ramirez–Alejandre is a native and citizen of Mexico. He petitions for review of the final order of deportation issued by the Board of Immigration Appeals (BIA) on June 6, 2000. An Immigration Judge (IJ) had previously ruled that Ramirez was entitled to suspension of deportation pursuant to section 244(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1254 (1994), but the INS appealed. The Board sustained the appeal, concluding that Ramirez would not suffer "extreme hardship" on being deported. As Ramirez acknowledges, we lack jurisdiction to review this discretionary decision under section 309(c)(4)(E) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009, 3009–625

(1996). However, because we retain jurisdiction to determine if the BIA violated his due process rights pursuant to 8 U.S.C. § 1252(b)(4)(D), Ramirez contends that his rights to due process were denied when the BIA refused to consider material which he offered for the first time while his case was pending on appeal. We disagree, and accordingly dismiss the petition.

## I

Ramirez illegally entered the United States on May 5, 1979. On May 4, 1990 the INS issued an Order to Show Cause, charging that Ramirez must be deported for having entered the United States without inspection in violation of INA § 241(a)(2), 8 U.S.C. § 1251(a)(2) (1990). He conceded deportability and applied for suspension of deportation. There was no question that he had seven years physical presence in the United States and that he was a person of good moral character; the focus by both the IJ and the BIA was on whether his deportation would cause extreme hardship to a qualifying relative. The IJ found that Ramirez would end up with less than a marginal job in Mexico and that his United States citizen child would enjoy better schooling, financial resources and medical care here than in Mexico. On March 17, 1992 the INS appealed the IJ's decision granting relief to the BIA.

After briefing was completed, Ramirez forwarded on January 7, 1993 a November 10, 1992 letter to the Board from his daughter's primary care physician (indicating that she had suffered several bouts of ear infections throughout the year) with the request that the "letter be included in the record of proceeding and considered in support of [his] application for suspension of deportation." On November 3, 1994 Ramirez filed a supplemental brief attach-

ing 24 additional documents. Among the documents was a September 12, 1994 letter from a chiropractor indicating that Ramirez had suffered a workers' compensation injury to his back on January 3, 1994 and was currently on full disability. Finally, on May 6, 1998 Ramirez submitted another supplemental brief in which he states that "[i]f the Board will permit respondent another evidentiary hearing, additional evidence of the hardship he and his United States citizen child will suffer can be offered."

The BIA rendered its decision June 6, 2000. The Board determined that Ramirez had not shown extreme hardship. Its decision also notes that while Ramirez had "submitted additional evidence on appeal that he claims supports a finding of 'extreme hardship,' this Board as an appellate body does not consider evidence submitted for the first time on appeal. *Matter of Fedorenko*, 19 I & N Dec. 57, 74 (BIA 1984)."

Ramirez has timely petitioned for review.

## II

■ It is now clear that we have jurisdiction only to review colorable due process challenges to the BIA's denial of suspension of deportation. *Sanchez–Cruz v. INS*, 255 F.3d 775, 779 (9th Cir.2001). "To be colorable in this context, the alleged violation need not be substantial, but the claim must have some possible validity." *Id.* (quoting *Torres–Aguilar v. INS*, 246 F.3d 1267, 1270–71 (9th Cir.2001)).

■ "A BIA decision violates due process 'if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Sanchez–Cruz*, 255 F.3d at 779 (quoting *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (internal quotations omitted)).

The alien must also show prejudice. *Sanchez–Cruz*, 255 F.3d at 779.

## III

■ Ramirez argues that the BIA's failure to consider all of the evidence that he offered in support of his application denied him due process. He relies on *Larita–Martinez v. INS*, 220 F.3d 1092 (9th Cir. 2000), where we stated:

> There is no administrative rule requiring the Board to review all relevant evidence submitted on appeal. It is beyond argument, however, that the Due Process Clause requirement of "a full and fair hearing" mandates that the Board do so in its capacity as a reviewing tribunal. Indeed, it is so expected that a court would review all relevant materials in the record that reviewing courts have presumed it.

*Id.* at 1095 (internal citation to *Cuadras v. INS*, 910 F.2d 567, 573 (9th Cir.1990) omitted). In *Larita–Martinez*, the petitioner advised the Board after taking an appeal from the IJ's denial of his application for suspension of deportation that his aunt and uncle had received permanent residency in the United States. The Board affirmed the IJ's denial of his application without mentioning Larita–Martinez's supplemental evidence. Before us, Larita–Martinez cited cases holding that it is an abuse of discretion to deny an application for suspension of deportation without specifically mentioning all relevant evidence, but he clothed his argument "in due process garb, contending that the Board ignored his sup-

plemental evidence." *Id.* We invoked the presumption that all evidence presented is considered unless the tribunal says otherwise, and held that Larita–Martinez had not overcome the presumption that the Board reviewed the record, including the supplemental evidence. Thus, we did not reach the due process question that Ramirez's petition squarely presents.

As Ramirez points out, the presumption is overcome in this case because the BIA's decision notes that the Board did not consider the materials which he offered while his appeal was pending. In so doing, he maintains, the BIA's understanding of its duties conflicts with its own regulations and with Ramirez's due process rights.

Ramirez argues that 8 C.F.R. § 3.2(c) (1999) permits petitioners to present evidence to the BIA on appeal if it is "material and was not available and could not have been discovered or presented at the former hearing." Section 3.2(c) provides for a motion to reopen before the BIA. Assuming (as Ramirez does) that the 1999 version is applicable, it requires that a motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material."[1] He concedes that his supplemental briefs did not specifically invoke § 3.2(c), which should be the end of the matter in light of the requirement that a request to reopen be in the form of a written motion to the Board. 8 C.F.R. § 3.2(a) (1999). Nevertheless, Ramirez

---

1. Section 3.2(c)(1) provides in pertinent part: A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for re-

lief and all supporting documentation. A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.
8 C.F.R. § 3.2(c)(1) (1999).

complains that the BIA simply ignored his requests for a new evidentiary hearing, thereby violating his due process rights by not considering the evidence (at least some of which, he says, satisfied the requirements of § 3.2(c) because it was both material and new). Ramirez contends that he was prejudiced by this, because the BIA's failure to consider evidence of his disability and his daughter's illness deprived him of the BIA's lawful exercise of discretion. We disagree.

First, there is no rule or regulation that requires the BIA to receive new evidence on appeal. The Board is an appellate body that has long articulated its function as being "to review, not to create, a record." *Fedorenko*, 19 I. & N. Dec. at 74. To be sure the Board may, and sometimes does, entertain supplemental evidence by taking administrative notice of commonly known facts such as agency documents or current events. *See, e.g., In re S–M–J*, 21 I. & N. Dec. 722, 733 n. 2 (BIA 1997), *disapproved on other grounds by Ladha v. INS*, 215 F.3d 889 (9th Cir.2000); *Kaczmarczyk v. INS*, 933 F.2d 588, 593 (7th Cir.1991). But Ramirez does not suggest that the documents he proffered are of this sort.

Further, there is a route by which a party affected by a decision made by the Board may offer new evidence. Ramirez could have filed a motion to reopen. Both the regulations and Board precedent make this clear. 8 C.F.R. § 3.2; *Matter of Coelho*, 20 I. & N. Dec. 464, 470–71 (BIA 1992). Because this route was available, the BIA's refusal to consider supplemental evidence in the form of documents submitted as part of appellate briefing did not deprive Ramirez of all avenues of review of newly discovered evidence that is material to his application for suspension of deportation. Accordingly, the proceeding before us is not "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Sanchez–Cruz*, 255 F.3d at 779 (internal quotations omitted).

■ Even if the BIA could have, or should have, construed Ramirez's lack of objection to another evidentiary hearing or his oblique request for one in opposition to the INS's appeal as a motion to reopen or remand, the BIA's refusal to consider the documents attached to one of his supplemental briefs cannot possibly amount to a due process violation. The BIA did not, as Ramirez contends, simply *ignore* the requests; it *rejected* them as inappropriate. Moreover, had this come to us in the form of an appeal from denial of a request to reopen, our review would be for abuse of discretion. *See Israel v. INS*, 785 F.2d 738, 740 (9th Cir.1986). This being so, we lack jurisdiction because "abuse of discretion claims recast as due process violations do not constitute colorable due process claims over which we may exercise jurisdiction in deportation suspension cases under the transitional rules." *Sanchez–Cruz*, 255 F.3d at 779.

*In sum, there was a course open to Ramirez to present* documents that were not part of the record before the IJ. Having failed to avail himself of it, Ramirez has no colorable claim that his due process rights were violated when the BIA declined to consider as evidence documents appended to his briefs on appeal. Therefore, we lack jurisdiction.

PETITION DISMISSED.

WARDLAW, Circuit Judge, dissenting:

Regardless of one's view of the rule set forth in *Larita-Martinez v. INS*, that decision directly controls the disposition of this case and requires the contrary result: the reinstatement of the IJ's grant of relief to Ramirez.

The majority asserts that we did not reach the due process question in *Larita–*

*Martinez.* This cannot be squared with the plain language of *Larita–Martinez* itself:

> *We first examine whether the Board committed an error constituting a due process violation.* There is no administrative rule requiring the Board to review all relevant evidence submitted on appeal. It is beyond argument, however, that the Due Process Clause requirement of a "full and fair hearing," mandates that the Board do so in its capacity as a reviewing tribunal. Indeed, it is so expected that a court would review all relevant materials in the record that reviewing courts have presumed it.

*Larita–Martinez,* 220 F.3d at 1095(citations and internal quotation marks omitted) (emphasis added). The necessary predicate to the *Larita–Martinez* panel's conclusion that the Board fulfilled its due process obligations is the holding that a due process requirement exists.

Under this rule, it is of no consequence whether the supplemental material was submitted before the IJ or whether it was submitted on appeal to the BIA. In this regard, however, *Larita–Martinez* and *Ramirez–Alejandre* are factually indistinguishable. In *Larita–Martinez,* the petitioner filed supplemental evidence, not available at the time of his hearing before the IJ, to support his claim of extreme hardship pending before the BIA. Here, Ramirez filed his supplemental evidence, not available at the time of his hearing before the IJ, to support his claim of extreme hardship pending before the BIA. In *Larita–Martinez,* we concluded that because Larita could not establish that the BIA had failed to review this supplemental evidence, his due process argument failed. 220 F.3d at 1096. Ramirez has no such obstacle. Here, the BIA expressly stated, "[a]lthough we note that the respondent has submitted additional evidence on appeal that he claims supports a finding of 'extreme hardship,' this Board as an appellate body does not consider evidence submitted for the first time on appeal."

In point of fact, the Board as an appellate body routinely considers evidence submitted for the first time on appeal in immigration cases. While the BIA often chooses to limit review to the evidence presented before the IJ, it has and does review new evidence submitted on appeal, and not only by taking administrative notice of commonly known facts, as the majority suggests. *See, e.g., Matter of Li,* 21 I & N Dec. 13, 18 (BIA 1995) (reviewing, on appeal, evidence regarding the legal effect of the termination of adoption in China); *Matter of Godfrey,* 13 I & N Dec. 790, 791 n. 1 (BIA 1971) ("in exceptional cases [the BIA will] receive and consider additional affidavits or other documents not previously available"); *Matter of Ss. Captain Demosthenes,* 13 I & N Dec. 345, 346 n. 1 (BIA 1969) (considering new evidence mitigating fine for violation of INA § 254(a)(2)). The BIA has been upheld both when it decided to consider new evidence not presented to the IJ, *Hazzard v. INS,* 951 F.2d 435, 440 (1st Cir.1991), and when it decided not to consider new evidence, *Ghassan v. INS,* 972 F.2d 631, 638 (5th Cir.1992). Indeed, in *Larita-Martinez,* we base our holding on the conclusion that the BIA had considered Larita's supplemental evidence submitted on appeal. 220 F.3d at 1096.

There was no reason for Ramirez to file a motion to reopen under 8 C.F.R. § 3.2, the route preferred by the majority. As the majority states, because "[t]here was no question that he had seven years physical presence in the United States and that he was a person of good moral character; the focus by both the IJ and the BIA was on whether his deportation would cause

extreme hardship to a qualifying relative." Opinion at 394. The IJ had already found in Ramirez's favor and the BIA had not yet ruled. Accordingly, there was nothing to reopen. Consistent with INS precedent, Ramirez submitted additional evidence of his daughter's recurring ear infections and his own back injury, which could only bolster the IJ's conclusion that deportation would have resulted in extreme hardship to Ramirez and his family. Instead of following its own procedures, the BIA simply decided to ignore them.

Although one might reasonably question whether an appellate body is required by due process to consider evidence submitted for the first time on appeal, one might equally reason that the BIA is not strictly an appellate body and given the BIA's *sui generis* and ever-evolving processes, due process requires it to consider such evidence. This debate, however, is beside the point because *Larita–Martinez* has already held that due process requires such consideration, and we are bound to follow *Larita–Martinez* until it is overruled by an *en banc* panel of this court. *See Roundy v. Commissioner*, 122 F.3d 835, 837 (9th Cir.1997) ("A three-judge panel is bound by a prior judgment of this court unless the case is taken en banc and the prior decision is overruled."). We cannot simply ignore the holding of a prior panel decision.

It is telling what the government says—and does not say—about *Larita–Martinez* in its briefing of this case. The government does not attempt to distinguish *Larita–Martinez* or even argue that it is not applicable. The government instead characterizes the mental state of the *Larita–Martinez* panel (Judges Wallace, Trott, and Gould) as "confused" and declares that the panel did not intend to say what it did. Because it has been my experience that the judges of our court say what they mean and mean what they say in published decisions, I find this argument wholly unpalatable. We may not rely on mind-reading when we have the words of our colleagues before us.

Because the majority opinion creates an intra-circuit conflict, I dissent.

