**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1109
_____

YUPING XU,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-868-065)
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 22, 2012

Before:  FUENTES, JORDAN and VAN ANTWERPEN Circuit Judges

(Opinion filed: August 23, 2012)
_____

OPINION
_____

PER CURIAM

    YuPing Xu petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal.  We will deny the petition.

I.

Xu is a citizen of China who entered the United States in 2001 on a visitor's visa, which she overstayed. In 2010, the Government charged her as removable for being present without having been admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Xu conceded the charge but applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT") on two grounds. First, Xu claims to have suffered past persecution under China's coercive family planning policies. Xu gave birth to two children in China, where they remain. She claims that she lost her job after having her second child and that Chinese authorities thereafter required her to wear an intrauterine device ("IUD"). Second, Xu claims to fear persecution on account of her membership in and activities on behalf of the Chinese Democratic Party ("CDP"), which she first joined in 2009 while in the United States. She claims that the Chinese government monitors CDP activities in the United States and will identify her as a CDP member and arrest her if she returns.

Xu testified to these events and offered evidence before the Immigration Judge ("IJ"). Regarding her family-planning claim, she testified that she had her IUD removed after entering the United States, and she submitted what purports to be a copy of a sonogram showing the presence of the IUD and a receipt purporting to document her payment for its removal. Regarding her political claim, she testified that she has been an active member of the CDP in the United States and has attended many protests, including protests before the Chinese embassy and consulate. She further testified that she has written two articles in opposition to China's policies that were posted on the CDP's website along with her name and picture. In addition, she testified that Chinese

2

authorities warned her father in China about her activities and told him that she would be arrested in China if she did not leave the CDP. She supported her testimony with photographs of her attending demonstrations and copies of her articles, though not with an affidavit or letter from her father. She also supported her testimony with the live testimony of Jian Qiang Li, a fellow CDP member, who testified about Xu's activities on behalf of the party and his belief that the Chinese government would identify and arrest her on return.

The IJ assumed that Xu's testimony was credible but denied her claims and ordered her removal to China. With regard to Xu's family-planning claim, the IJ concluded that her asylum application was untimely because she had not submitted it within one year of entering the United States. See 8 U.S.C. § 1158(a)(2)(B). The IJ also concluded that she would not be entitled to relief on that claim in any event because she failed to adequately corroborate it and because her claimed mistreatment—insertion of an IUD and the loss of her job—did not rise to the level of persecution. The IJ did not apply the one-year bar to Xu's political claim. Instead, the IJ denied that claim because he concluded that Xu had not adequately corroborated it and thus had not met her burden of proof. In particular, the IJ concluded that Xu had not submitted any evidence that the Chinese government is aware of her activities in the United States or would identify and harm her on return. In that regard, the IJ noted that Xu had not submitted a letter or affidavit from her father. The IJ also rejected Li's testimony because the factual basis of his opinions was not clear and was not supported by objective evidence such as a Department of State Country Report, of which there was none in the record. In sum, the

3

IJ concluded that Xu had not met her burden of proving eligibility for asylum, the higher burden of proving entitlement to withholding of removal, or that she faces torture if returned to China.

Xu appealed to the BIA and submitted various items of evidence for the first time on appeal, including a statement from her father and the 2009 Country Report. On December 23, 2011, the BIA dismissed her appeal. The BIA declined to consider Xu's new evidence for the first time on appeal and declined to remand in light of that new evidence because Xu did not show that it was previously unavailable. The BIA also summarized the IJ's reasons for denying Xu's claims and essentially agreed. Xu petitions for review.[1]

## II.

Xu challenges three of the BIA's rulings on review. First, she challenges the denial of asylum on her political claim based on her membership in and activities on behalf of the CDP. The BIA rejected this claim for lack of corroboration that the Chinese government is aware of those activities and intends to harm her if she is returned to China. The BIA properly required proof of those circumstances, see Leng v. Mukasey, 528 F.3d 135, 143 (2d Cir. 2008), and Xu does not argue otherwise. The only argument she raises on this point is that her testimony was deemed credible and that credible

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review the BIA's ruling but look to that of the IJ to the extent that the BIA affirmed and reiterated the IJ's conclusions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review factual findings for substantial evidence and must treat them as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. at 251 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal issues de novo. See id.

4

testimony alone is sufficient to carry her burden of proof.  See 8 U.S.C. §

1158(b)(1)(B)(ii).  It was well-settled even before the REAL ID Act (which applies here),

however, that IJs may require even credible applicants to provide reasonable

corroborating evidence.  See Sandie, 562 F.3d at 252.  That principle is now codified at 8

U.S.C. § 1158(b)(1)(B)(ii).  Xu neither acknowledges this principle nor raises any

argument on review that the IJ erred in demanding corroboration or in analyzing that

issue.  See Sandie, 562 F.3d at 252-53.  She also raised no such argument before the BIA,

as the BIA noted.  Thus, Xu has both waived and failed to exhaust any argument in this

regard.  See 8 U.S.C. § 1252(d)(1).[2]

Second, Xu challenges the denial of relief on her family-planning claim.  The IJ

denied asylum on this claim because Xu did not file her asylum application within one

year of entering the United States, and the BIA agreed.  We lack jurisdiction to review

that ruling.  See 8 U.S.C. § 1158(a)(3).  Thus, Xu appropriately limits her argument on

this claim to the denial of withholding of removal (she raises no separate argument as to

her claims under CAT).  Xu argues that she is entitled to withholding because the

insertion of the IUD and loss of her employment in China constitute past persecution,

which raises a presumption that she more likely than not will be persecuted in the future.

---

[2] We nevertheless note that the IJ identified the testimony for which he sought
corroboration and that Xu had an opportunity to explain its absence.  See Sandie, 562
F.3d at 253.  Xu testified that she had not submitted a statement from her father because
"I didn't think of it at the time, to ask my father for written documents, because at that
time my father was just strongly requesting me to withdraw from the organization to stop
participating."  (A.R. 202).  The IJ acknowledged that explanation and, though he did not
specify why, must implicitly have rejected it.

See Garcia v. Att'y Gen., 665 F.3d 496, 505 (3d Cir. 2011). The BIA affirmed the denial of this claim both because Xu failed to corroborate it and because her allegations do not rise to the level of persecution in any event. Xu does not challenge or even acknowledge the second of these independent reasons for denying her claim and instead raises an argument addressed solely to the first. We need not consider that argument because the BIA's ruling would stand even if it were persuasive. We note, however, both that Xu's argument is not persuasive and that the BIA's unchallenged second conclusion is sound in any event.[3]

Finally, Xu argues that the BIA erred and denied her due process in refusing to consider the new evidence she submitted on appeal, which is summarized in the margin.[4]

---

[3] The BIA properly determined that the insertion of an IUD and loss of employment, without more, do not rise to the level of persecution. See Cheng v. Att'y Gen., 623 F.3d 175, 188, 192-94 (3d Cir. 2010). Xu did not testify to any aggravating circumstances regarding the insertion of her IUD or to any extreme financial hardship caused by her violation of China's family planning policies that might have caused her IUD insertion and loss of employment, considered together, to rise to that level. See id. at 193-94. She does not claim otherwise on review. Instead, she argues only that the IJ erred in rejecting her evidence regarding the IUD, which was a copy of a sonogram purporting to show its presence and copies of receipts purporting to document her payment for its removal. The IJ rejected this proof as "meager" because neither the receipts nor the apparent sonogram contain any details that would permit him to determine what they are. We cannot say that that assessment was erroneous. (A.R. 349-50.) Xu argues that the IJ had a duty to raise those concerns and question her about them at the hearing, but Xu addressed both the underlying events and her evidence in her testimony (A.R. 204-05), and we perceive no error in this regard.

[4] Xu submitted: (1) a letter from her father corroborating her testimony about threats from the Chinese government; (2) a letter from a former co-worker in China corroborating Xu's testimony that she was fired for violating China's family-planning policies; (3) a letter from a physician stating that Xu had an IUD removed in 2004; (4) a letter from the self-professed "person in charge" of the CDP regarding China's repression of the CDP generally; (5) a letter from another CDP member asserting that she suffered

6

We disagree. The BIA explained that, as an appellate body, it "cannot" consider evidence first offered on appeal. Xu argues that the BIA's own precedent allows it to do so under certain circumstances. See In re Godfrey, 13 I. & N. Dec. 790, 791 n.1 (BIA 1971); In re SS. Captain Demosthenes, 13 I. & N. Dec. 345, 346 n.1 (BIA 1969); In re N——, 9 I. & N. Dec. 506, 511-12 (BIA 1961). As another court has recognized, however, this line of authority has been superseded by subsequent regulations. See Ramirez-Alejandre v. Ashcroft, 320 F.3d 858, 865, 868-69 (9th Cir. 2003). The current regulations prohibit the BIA from engaging in fact-finding on review. See 8 C.F.R. § 1003.1(d)(3)(iv). We thus perceive no reversible error in this regard.[5]

unspecified "personal persecution and detains [sic]" after returning to China from the United States; and (6) the 2009 Country Report. (A.R. 58-154.) Aside from the Country Report, which was issued over three months before the IJ's decision, all of this evidence is dated within days thereafter.

[5] We note that the regulation permits the BIA to take administrative notice on appeal of "'the contents of official documents,'" including Country Reports. Sheriff v. Att'y Gen., 587 F.3d 584, 592 (3d Cir. 2009) (quoting 8 C.F.R. § 1003.1(d)(3)(iv)). In concluding that it "cannot" consider Xu's new evidence, which included the 2009 Country Report, the BIA appears to have been unaware of this discretion. Ordinarily, we might remand for the BIA to consider and exercise that discretion in the first instance. In this case, however, there is no need to do so. The BIA rejected Xu's political claim because she did not submit any evidence that the Chinese government (1) is aware of her political activity in the United States and intends to harm her on return, or (2) has a pattern or practice of so treating those similarly situated. Xu relies on a portion of the 2009 Country Report stating that "the CDP remained banned, and the government continued to monitor, detain and imprison current and former CDP members." (A.R. 105.) (Xu purports to quote additional statements from this report, Petr.'s Br. at 9-10, but those statements are not actually contained in the report or anything else of record. We trust that the misquotation was inadvertent.) Neither this statement nor anything else in the 2009 Country Report, however, speaks to the Chinese government's awareness of political activities in the United States or its identification and treatment of those who engage in them. The BIA also declined to consider the 2009 Country Report for the independent reason that it was previously available, which it indisputably was. Thus, it is

7

We also perceive no error in the BIA's refusal to reopen and remand Xu's case to the IJ on the basis of this new evidence. The BIA explained that Xu did not satisfy the standard for reopening because she did not show that her new evidence was previously unavailable. See 8 U.S.C. § 1003.2(c)(1). On review, Xu argues that "[t]he Petitioner was unable to get a letter from her father [before the hearing] because her home and her father were both monitored by the Chinese government, so her father was not able to send any letter to her." (Petr.'s Br. at 9.) Xu did not present this argument (which conflicts with the explanation she gave at her hearing) to the BIA. Nor has she explained how those alleged circumstances changed in order to permit her father to send her a letter just four days after the IJ's decision.

For these reasons, we will deny the petition for review.

---

"highly probable" that neither the BIA's consideration of this report nor its recognition of its discretion to consider it would have had any bearing on the BIA's ruling. Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (adopting harmless error on immigration review).